In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2172

Thomas E. Harris,

Plaintiff-Appellant,

v.

City of Chicago and Alex D. Ramos, Officer,
individually, and as a police officer
for the City of Chicago, Illinois,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 684--Blanche M. Manning, Judge.

Argued April 3, 2001--Decided September 21, 2001


  Before Posner, Kanne, and Rovner, Circuit
Judges.

  Kanne, Circuit Judge.  During discovery
in this civil case, defendant-appellee
Alex Ramos refused to respond to a
number of discovery requests, instead
invoking his Fifth Amendment privilege
against self-incrimination. At trial,
however, Ramos answered all questions
posed to him on direct and cross-
examination, and all evidence of his
prior silence was excluded. After a jury
verdict for the defendants, plaintiff-
appellant Thomas Harris moved for a new
trial contending that the effect of
these two rulings--permitting Ramos to
respond to questions that he had
previously refused to answer while
simultaneously excluding evidence of
Ramos's prior silence--allowed Ramos to
avoid the discovery process altogether.
Because we agree that the district court
committed prejudicial error, we reverse
and remand for a new trial.

I.  History

  On December 7, 1993, Chicago police
officer Alex Ramos--who was also a part-
time YMCA security officer--arrested the
plaintiff, Thomas Harris, at his YMCA
residence. The parties vigorously
dispute the events giving rise to the

arrest. Harris contends that Ramos forced his way into his apartment, placed him under arrest, and placed a small amount of cocaine on his person. He claims that he was falsely arrested because, a few days earlier, he had refused to help Ramos convert stolen drugs into cash. For his part, Ramos claims that he was walking by Harris's apartment when he overheard what he believed to be a drugs-for-sex transaction occurring inside. According to Ramos, as he was standing outside Harris's doorway, the door suddenly flung open and a woman ran out. Ramos alleges that he observed drugs and drug paraphernalia inside Harris's room and that, after a struggle, he forced his way into Harris's room and arrested him. Pursuant to the charges brought by Ramos, Harris was incarcerated at the Cook County Jail for over 400 days. The State of Illinois dropped all charges against Harris on February 20, 1997, however, after Ramos was arrested and charged with a number of criminal offenses including racketeering, extortion, carrying a firearm during a drug crime, and possession with intent to distribute crack cocaine.

Harris filed suit against Ramos and the City of Chicago pursuant to 42 U.S.C. sec. 1983 alleging, inter alia, claims of federal and state law malicious prosecution. On October 15, 1997, the district court granted a stay of discovery until the criminal charges pending against Ramos were resolved. On May 21, 1998, Ramos was found guilty of each of the criminal counts against him, and, shortly thereafter, the district court lifted the stay.

After the stay was lifted, Harris served written discovery requests on Ramos. Invoking his Fifth Amendment privilege against self-incrimination, Ramos refused to answer any of plaintiff's interrogatories, document requests, orrequests to admit./1 On the advice of counsel, Ramos again refused to give any testimony at his scheduled deposition on July 31, 1998. Harris moved to compel, and the district court granted the motion on August 12, 1998. Ramos was consequently re-deposed on September 28, 1998. At his second deposition, Ramos selectively invoked his Fifth Amendment privilege. He

refused to answer any questions about the time frame of his criminal activities, his criminal convictions, and whether his encounter with Harris was part of a criminal enterprise for which he was convicted. Harris then filed another motion to compel, arguing that Ramos had invoked the Fifth Amendment to avoid answering several questions which could not possibly incriminate him. Pursuant to Harris's motion, the court ordered Ramos to respond in writing to any questions to which he had inappropriately invoked the Fifth Amendment. At no time before the close of discovery on November 25, 1998, did Ramos or his counsel attempt to amend or supplement Ramos's interrogatory responses or produce any documents.

The case proceeded to trial on February 17, 1999. At trial, Ramos waived his Fifth Amendment privilege and answered all questions posed to him on direct as well as on cross-examination, including questions which he had previously refused to answer. Over the objection of Harris's counsel, the district court barred Harris from impeaching or cross-examining Ramos with his prior silence. On February 26, 1999, the jury returned a verdict for the defendants. Harris filed a motion for a new trial, arguing that the district court abused its discretion by precluding evidence of Ramos's invocation of the Fifth Amendment. The district court denied the motion, and Harris now appeals.

II.  Analysis

A.  Standard of Review

On appeal, Harris contends that the district court should have granted a new trial because allowing Ramos to testify at trial while excluding any evidence of his prior silence allowed the defendants to avoid the discovery process "with impunity." We review the denial of a motion for a new trial for abuse of discretion. See Goodwin v. MTD Prods., Inc., 232 F.3d 600, 606 (7th Cir. 2000). In order to ascertain whether the district court improperly refused to grant a new trial in this case, we must first determine whether the challenged ruling was "prejudicial error." Romero

v. Cincinnati Inc., 171 F.3d 1091, 1096 (7th Cir. 1999). We now turn to that question.

## B.  Exclusion of Ramos's Prior Silence

The district court ruled that Harris would not be allowed to present evidence of Ramos's invocation of the Fifth Amendment to the jury despite the well-settled principle that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); see also LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 389-91 (7th Cir. 1995) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own."). The reason for the district judge's ruling is not clear from the transcript or from the order denying a new trial,/2 but the parties agree that the district judge most likely excluded the evidence because she determined that the prejudicial effect of Ramos's prior silence substantially outweighed its probative value. See Fed. R. Evid. 403.

Whether this evidence was properly excluded under Rule 403 depends on the timing of Ramos's abandonment of the Fifth Amendment privilege with respect to the events leading up to Harris's arrest. If--as defendants contend--Ramos waived his privilege well before trial and agreed to testify to matters concerning Harris's arrest, then Harris had sufficient opportunity to obtain discovery from Ramos on all issues related to the trial. Thus, the probative value of Ramos's prior silence was extremely low and the district court was justified in excluding it pursuant to Rule 403. See Fed. R. Evid. 403. On the other hand, if--as Harris claims--Ramos refused to answer any questions about his encounter with the plaintiff until just prior to trial, it was error for the district court to exclude Ramos's prior silence because the effect of such a ruling would be tantamount to allowing Ramos to avoid discovery altogether. See McGahee v.

Massey, 667 F.2d 1357, 1362 (11th Cir. 1982) ("A defendant cannot have it both ways. . . . [He may not] testify in attack . . . and at the same time seek refuge behind the shield of the Fifth Amendment."). In that situation, the district court should have either prevented Ramos from testifying to matters about which he had previously refused to testify or allowed Harris to impeach him with his prior silence on those matters.

As indicated above, defendants argue that the district court's ruling was proper because Ramos waived his Fifth Amendment privilege well before trial./3 They assert that Ramos was ready and willing to testify about the events surrounding his encounter with Harris at his September 28, 1998 deposition. According to the defendants, Ramos did not testify about these events at his deposition because Harris failed to phrase his questions narrowly enough to avoid an invocation of the Fifth Amendment. We cannot agree. First of all, defendants' contention that Ramos was willing to speak freely at the September 28, 1998 deposition is belied by the fact that, at that deposition, Ramos invoked the Fifth Amendment in response to several general questions which could not possibly have incriminated him./4 Defendants also gloss over the fact that Ramos never amended or supplemented any of his interrogatory responses, nor did he ever produce a single document during discovery. Rule 26 of the Federal Rules of Civil Procedure provides that: "a party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect." Fed. R. Civ. P. 26(e)(2). Thus, Harris was entitled to assume that Ramos's interrogatory responses had not changed, and rely on those answers in preparing for deposition. Absent an effort by Ramos to clarify where he asserted the privilege and where he did not, it was not unreasonable for Harris to assume that Ramos's position with respect to the privilege remained unchanged. Contrary to defendants' suggestion, Harris was not required to continue asking questions until he hit

an issue that Ramos was willing to testify about. Therefore, we agree with Harris that Ramos did not abandon his Fifth Amendment privilege with respect to the events at issue in this case until just prior to trial. Consequently, we find that the district court's ruling that Harris was precluded from presenting to the jury evidence of Ramos's prior silence was an abuse of discretion./5

C.  Harmless Error

  Although we have determined that the district court erroneously excluded evidence of Ramos's prior invocation of the Fifth Amendment, a new trial is not required if the error was harmless. See Romero v. Cincinnati Inc., 171 F.3d 1091, 1096 (7th Cir. 1999). The Federal Rules of Civil Procedure provide that "[n]o error in either the admission or the exclusion of evidence is . . . ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61. Our cases hold that "evidentiary errors satisfy this standard only if a significant chance exists that they affected the outcome of the trial." Hasham v. California State Bd. of Equalization, 200 F.3d 1035, 1048 (7th Cir. 2000).

  Here, defendants present three arguments to support their claim that the exclusion of Ramos's prior silence was harmless error. First, they argue that, once Ramos took the stand and answered all questions posed to him, evidence of his prior silence would not have been helpful to Harris's case because, at that point, Harris was free to ask Ramos about any of the details of his encounter with Harris. Next, defendants claim that the evidence at trial that Ramos was convicted of a myriad of federal offenses was far more damaging to his credibility than testimony about his prior invocation of the Fifth Amendment would have been. Lastly, defendants claim that the district court's exclusion was harmless because, even if the district court had admitted evidence of Ramos's prior silence, the jury would not have been

required to draw an adverse inference from that evidence. See Daniels v. Pipefitters Ass'n Local Union No. 597, 983 F.2d 800, 802 (7th Cir. 1993) (finding that the adverse inference to be drawn from the invocation of the Fifth Amendment is permissive rather than mandatory).

We are unable to accept defendants' claim that the evidence of Ramos's prior invocation of the Fifth Amendment could not possibly have had an effect on the outcome of the trial. Although plaintiff was allowed to ask Ramos about details of the incident at trial, he was forced to do this without the benefit of any discovery. Harris's ability to formulate a trial strategy was certainly hindered by the fact that he had no idea what Ramos was going to say while on the stand. We also disagree with defendants' contention that there is no material difference between the impeachment effect of the fact that Ramos was a convicted felon and the fact that he had invoked the Fifth Amendment with respect to specific questions about his encounter with Harris. The inference that the jury drew from the fact that Ramos had been convicted of various federal crimes is certainly different from the inference the jury would likely have drawn from the fact that Ramos' specifically invoked the Fifth Amendment in response to questions about his arrest of Harris. Furthermore, the fact that the jury was not required to draw an adverse inference from the evidence of Ramos's prior silence is not enough to render the error in this case harmless. Not only was Harris prevented from impeaching Ramos with his silence, he was also precluded from arguing to the jury that a negative inference should be drawn from that silence. For all of these reasons, we are convinced that there is a significant chance that the outcome of the trial was affected by the exclusion of Ramos's invocation of the Fifth Amendment in response to questions relating to the incident in question.

III. Conclusion

For the reasons stated above, we REVERSE the judgment of the district court and REMAND for a new trial.

FOOTNOTES

/1 The interrogatories included questions concerning: the sequence of events which led to Harris's arrest on December 7, 1993; Ramos's use of force in arresting Harris; whether Ramos had ever been charged with abuse of authority; and whether Ramos had been the subject of an internal review for abuse of authority.

/2 It does not appear that this ruling resulted from a misunderstanding of the relevant legal principle because, in the order denying a new trial, the court properly recognized that "there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self incrimination." Harris v. City of Chi., No. 97 c 684, slip op. at 6 (N.D. Ill. March 31, 2000) (order denying Harris's motion for a new trial) (quoting National Acceptance Co. v. Bathalter, 705 F.2d 924, 929-30 (7th Cir. 1983)).

/3 Defendants initially asserted that Ramos's attorney had informed the district court prior to Ramos's deposition that "Ramos would invoke his Fifth Amendment privilege only when answering questions that tended to incriminate him in the pending criminal charges." Appellees' Bri. at 7. Because plaintiff vigorously disputed this statement, we asked Ramos's trial counsel, Sheldon Nagelberg, to file an affidavit explaining whether, when, and in what manner he first advised the district court of his client's Fifth Amendment position. Nagelberg's affidavit confirmed that he did not inform the district judge that his client did not intend to assert the privilege--with respect to his encounter with Harris-- prior to the September 28, 1998 deposition.

/4 Ramos asserted the Fifth Amendment in response to questions such as: "What did your duties entail as a patrolman?" and "Who was your partner?" Tr. of Ramos Dep. at 9, 17.

/5 Our review of the record leads us to believe that the court's ruling was a result of the district judge's mistaken belief that Ramos had consistently maintained the position that he would invoke the Fifth Amendment only in response to questions tending to incriminate him in the pending criminal proceedings. This confusion was probably due, in part, to Ramos's attorney's representation at the pretrial hearing that, "[Ramos] will talk freely and answer questions about December 7 of 1993 and subsequent court action at 26th and California. We have always maintained that position." Because all discovery matters were initially assigned

to the magistrate, the district judge may not have realized that this statement misrepresented the extent and scope of Ramos's prior silence.