# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 01-3069

DIANA W. HAYES,

*Plaintiff-Appellant*,

v.

JOHN E. POTTER, POSTMASTER GENERAL
OF THE UNITED STATES POSTAL SERVICE,

*Defendant-Appellee*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 99-C-904—**Sidney I. Schenkier**, *Magistrate Judge.*

———————

ARGUED JUNE 5, 2002—DECIDED NOVEMBER 13, 2002

———————

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and
WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Diana Hayes works for
the United States Postal Service. She initiated this action
against her employer, claiming that it violated her rights
under the Rehabilitation Act of 1973, 29 U.S.C. § 791, and
that it retaliated against her in violation of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The case
proceeded to trial. At the close of all the evidence, the dis-
trict court granted the Postal Service's motion for judgment
as a matter of law on the Rehabilitation Act claim. The

Title VII retaliation claim went to the jury, but the jury also found in favor of the Postal Service. Hayes filed a motion for a new trial on the retaliation claim under FED. R. CIV. P. 59. The district court denied the motion, and Hayes now appeals only from that ruling.

## I

There was a full trial on Hayes's retaliation claim. This has important consequences for Hayes's appeal, because it means that she faces a difficult standard of review. Although we will look at the entire record, the only question we may consider is whether the district court abused its discretion in its decision to deny the Rule 59 motion. See, *e.g.*, *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 921 (7th Cir. 2002); *Harris v. City of Chicago*, 266 F.3d 750, 753 (7th Cir. 2001). We do not re-weigh the evidence; instead, we must view the record in the light most favorable to the prevailing party, here, the Postal Service. *Research Sys. Corp.*, 276 F.3d at 921.

Hayes worked at the mail distribution warehouse in Bedford Park, Illinois. Her position required her to sort and distribute letters into mail slots. She was assigned to Tour 3, a shift that ordinarily began around 5:30 p.m. and ended at 2:00 a.m. There are two other shifts in the Postal Service. Tour 1 begins around 11:00 p.m. and ends between 7:00 and 8:00 a.m., while Tour 2, the most coveted shift, begins at 7:00 a.m. and ends at 3:00 p.m. All Postal Service employees receive two days off each week, not necessarily on the weekend; Hayes's official days off were Saturday and Sunday.

In 1995, Hayes filed charges in which she claimed that her supervisor, Jerry Cubic, had discriminated against her. That case proceeded to trial in 1997 and continued until Hayes became ill and required heart surgery. At that point,

her lawsuit was dismissed without prejudice because she was unable to attend the rest of the trial.

Following her surgery, the Postal Service approved medical leave for Hayes for the period between February and April 1997. On April 7, Hayes returned to work, after both Dr. Patrick O'Leary, her personal doctor, and Dr. Anthony Bilotta, a contract doctor for the Postal Service, gave their approval. She was placed on Tour 3 and was instructed to report to Juanita Smallwood, the manager of distribution operations. In late April and again in May 1997, Hayes asked Smallwood to change her hours from a shift beginning at 5:30 p.m. to an earlier shift. Eventually, hoping to support that request, she submitted a letter from Dr. O'Leary stating that Hayes was to work "light duty, 6 hours only, must start work by 8:00 a.m." Smallwood disapproved this request, explaining that the doctor's statement did not explain why her medical condition required any changes. Nonetheless, in an effort to accommodate Hayes, Smallwood permitted her to begin work at 3:00 p.m and end at 9:00 p.m.

During this period, Hayes filed a series of Equal Employment Opportunity (EEO) complaints, naming several employees and managers including Smallwood. On June 3, 1997, Hayes wrote a letter to Smallwood complaining that Smallwood's decision to deny her request for temporary light duty on Tour 2 was "discriminating and retaliatory" and motivated by Hayes's EEO grievance and union activity. Hayes also asserted that a 3:00 p.m. start time was against her "doctor's prescribed restrictions." The letter reflected that it was copied to Celestine Green, the Plant Manager, along with Ruby Tarver and Todd Hawkins, both Postal Service managers. On June 28, Hayes wrote another letter accusing Smallwood of retaliation, harassment, and discrimination. She addressed this letter to Green and again copied Smallwood, Hawkins, and Tarver.

Hayes responded to her lack of success in securing the desirable 8:00 a.m. start time by stopping coming to work altogether; this meant that she was Absent Without Official Leave (as in the military, AWOL) from most of May through the beginning of August 1997. In August, Hayes again asked for a change in start time, this time submitting a Postal Service light duty request form completed by her doctor that stated Hayes needed a daytime, five-hour schedule. Smallwood eventually agreed to give Hayes temporary light duty, with an 8:00 a.m. start time. This position lasted until the end of March 1998. Hayes was then ordered to report back to her official Tour 3 assignment.

In protest, Hayes again was AWOL from the end of March until the end of May 1998. On May 2, Hayes initiated the request that led directly to this lawsuit. She wrote to Green requesting a permanent light duty assignment on Tour 2. Her doctor also sent a letter to Green, stating that nighttime sleeping hours could help with Hayes's recuperation and that her medication caused drowsiness. Nurse Administrator Lillie Yancey responded to Hayes's application with her own request for additional information, including medical records. Hayes's doctor provided her records as well as a letter that stated she should not lift over 20 pounds and she had to keep reaching above her shoulders to a minimum. On August 20, Green denied Hayes's request for a permanent change in work hours after consulting with several administrators because Hayes's "doctor's letter did not request a change of tour," and the "limitations and prescribed medications do not warrant a change of tour."

Hayes asked the Postal Service to reconsider its decision on August 25, 1998, stating that she disagreed with its interpretation of her doctor's letter. Three days later, James Malone, the union president, also wrote a letter in support of Hayes's request. Green agreed temporarily to postpone a final decision while a Postal Service contract doctor re-

viewed Hayes's medical records. After receiving information from Dr. Sherri Phillips, Green wrote Malone denying Hayes's request on September 2, 1998. The following day, after speaking with Hayes's personal doctor, Dr. Phillips sent a letter to Green, recommending that the Postal Service honor her physician's request.

On October 2, Hayes and Malone sent a letter to Green asking what action the Postal Service intended to take in response to Dr. Phillips's most recent letter. To clear up what the Postal Service viewed as an inconsistency, it instructed Hayes to report to a fitness-for-duty examination with Dr. Bilotta. After a routine physical examination, Dr. Bilotta found that Hayes had high blood pressure and referred Hayes to Dr. Leonard Kessler for psychological counseling to determine whether Hayes needed a permanent light duty assignment due to anxiety and stress. After Dr. Kessler met with Hayes and reviewed reports from Dr. O'Leary and Dr. Bilotta, he found that Hayes did not have a psychiatric illness. Dr. Phillips passed along the word to the Postal Service that Hayes did not have a psychiatric illness severe enough to interfere with her work functions. In the end, Green denied Hayes's request for reconsideration stating that she relied on Dr. Phillips's medical expertise.

At trial Hayes argued to the jury that the Postal Service managers had denied her requests for permanent and temporary light duty because of her repeated EEO complaints and her prior discrimination suit. In addition to Green, she accused Yancey, Dr. Phillips, Fizer, the Postal Police, and Smallwood (among others) of discrimination. At least six of the EEO complaints named Green specifically, and it was Green's awareness of these complaints that was eventually a central issue, given the fact that Green was the person who ultimately denied the request for a permanent change of working hours. Green herself testified at trial that she had no recollection of Hayes's complaints.

At the close of evidence, the Postal Service orally moved pursuant to Rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law on both of Hayes's claims. As we noted before, the district court granted the motion with respect to the disability discrimination claim, but it sent the retaliation case to the jury. The verdict form submitted four questions to the jury. Question One asked the jury if it found that Hayes had "proved by a preponderance of the evidence that she had made a claim of discrimination or had engaged in other protected activity prior to the time the defendant Service denied her requests for accommodation." The jury responded yes to that question and continued on to Question Two, which asked whether Hayes had proved that the "managerial employees of the defendant had knowledge of her prior claims of discrimination at the time they acted on her requests for permanent light duty work on Tour II with weekends off?" The jury responded no, and was instructed that this meant that it found in favor of the Postal Service on the retaliation claim.

Hayes filed a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, arguing that the verdict was against the weight of the evidence; the district court denied the motion.

## II

Hayes cannot prevail on this appeal just by showing that there was evidence that the jury might have believed that would have supported a finding that the relevant managerial employees knew about her prior claims of discrimination. She must show instead that the district court abused its discretion in concluding that a rational jury could have found in favor of the Postal Service. At trial Hayes tried to meet her burden by introducing into evidence the letters she sent to Green, along with EEO complaints that specifically named Green. She argues that managerial employees

and Green in particular must have known about her discrimination complaints when they denied her requests for permanent light duty and thus that the jury's response to Question Two is not supported by the record. She also maintains that Green's testimony did not refute the paper trail of letters and EEO complaints.

We will generally presume timely delivery of properly addressed mail, *Bobbitt v. Freeman Co.*, 268 F.3d 535, 538 (7th Cir. 2001), but in a retaliation case, it is not enough that the decisionmaker should have known about a discrimination complaint; the decisionmaker must have had actual knowledge of the complaint for her decision to be retaliatory. *Maarauf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000).

On this record, we cannot say that the evidence compelled the conclusion that Green had the requisite actual knowledge about Hayes's complaints. Green was responsible for over 3,000 employees, 1300 at Hayes's site alone, and a reasonable jury could have believed that nothing stood out about Hayes's barrage of EEO complaints and letters. Moreover, Hayes failed to offer specific evidence to refute the Postal Service's theory that Green had no knowledge of Hayes's complaints. The problem was not that Hayes lacked the opportunity to introduce such evidence. In fact, the lawyer for the Postal Service specifically questioned Green about her knowledge of Hayes's complaints:

> Q. And Diana Hayes was one of the 1300 employees at the Bedford Park facility back in 1998, is that correct?
>
> A. Right.
>
> Q. Were you—or did you know who Diana Hayes was back in 1998?
>
> A. I probably did.
>
> Q. Were you aware that based upon your decisions that you made in this case that Miss Hayes filed EEO

complaints against you for discrimination based upon her race and her gender?

A.  I don't recall it specifically. I really don't.

Q.  Were you aware, though, that she alleged that your decisions that you made in this case were based upon discriminating against her because she was African American and because she was female?

A.  I'm sorry. I really don't recall it.

These were the only questions that specifically addressed what Green knew regarding the EEO complaints, and they came on cross-examination by the Postal Service. On redirect, Hayes's attorney did not raise the subject. There were several facts Hayes conceivably could have placed before the jury that might have made a finding that Green was unaware of the complaints against the weight of the evidence. For example, Hayes could have called the EEO inspectors to testify whether a very senior manager such as Green would always be personally notified every time she is named in an EEO charge. Hayes's attorney could have also asked Green whether she ordinarily is notified about EEO charges, or at least had her describe her mail receipt process. The EEO investigators might have had documentation showing that they met personally with Green to discuss the charges. Whether Green opened her own mail, or personally reviewed any discrimination charges are all relevant questions that could have been raised. It was up to Hayes to get this evidence into the record; as the plaintiff she had the burden of proof. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08 (1993). Based on testimony that made it into the record, however, the jury was not required to find that Hayes stood out among Green's thousands of employees or that Green was personally notified when Hayes filed the EEO charges. True, the jury *could* have inferred from Smallwood's testimony that Green was aware of Hayes's EEO complaints or that Green similarly was

notified; but the jury did not make that inference and we cannot conclude that it was compelled to do so.

We also reject Hayes's argument that there is a rule according to which, when documents and witness testimony conflict, the jury must consider only the documents. There is no such rule. Moreover, the cases on which Hayes relies to support her argument, *Kidd v. Illinois State Police*, 167 F.3d 1084, 1100 (7th Cir. 1999)*; Sachs v. Ohio Life Ins. Co.*, 148 F.2d 128, 131 (7th Cir. 1945); *Vallarta v. Lee Optical of Missouri*, 298 N.E.2d 212, 215 (Ill. App. 1973), are not even jury cases, but instead are bench trial cases. Although it is not particularly important, the documents to which Hayes refers us did not plainly contradict Green's testimony that she did not recall anything about complaints from Hayes. As we already noted, the jury could have believed that Green did not keep track of the EEO complaints from over 3,000 employees. Finally, there is no evidence that any manager other than Green had the power to act on Hayes's request for a new permanent job assignment; thus, the fact that other managers may have been aware of Green's complaints is immaterial, as they had no ability to act on her request.

## III

Although a jury could have found in favor of Hayes, it did not. Hayes has not shown that the district court abused its discretion in concluding that the jury's verdict was not against the manifest weight of the evidence. We AFFIRM the judgment of the district court.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*