JEFFREY PERELMAN, Plaintiff-Appellant, v. JACK FISHER *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—97—3217

Opinion filed August 26, 1998.

Hilfman & Fogel, P.C., of Chicago (Robert L. Fogel, of counsel), for appellant.

Tribler, Orpett & Crone, P.C., of Chicago (Steven R. McMannon and Matthew B. Parker, of counsel), for appellees.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Jeffrey Perelman appeals from the circuit court's order dismissing his breach of contract and negligent misrepresentation claims against defendants Jack Fisher and Amsterdam Financial Group, Ltd. On appeal, plaintiff contends that: (1) "in an action by an insured against his broker/agent, there is no presumption of knowledge of breach of contract"; (2) the statute of limitations on his claims did not commence until plaintiff knew or reasonably should have known he had been damaged and that the damage was wrongfully caused; and (3) section 2—619 of the Civil Practice Law (Act) (735 ILCS 5/2—619 (West 1992)) prohibits the trial court from resolving factual questions where the nonmovant has filed a jury demand. For the reasons set forth below, we reverse and remand this case for further proceedings.

In September 1988, plaintiff hired defendant, Jack Fisher (Fisher), an insurance broker who owned and operated Amsterdam Financial Group, Ltd., for the purpose of procuring a disability insurance policy. Fisher offered and plaintiff accepted a Paul Revere Life Insurance Company disability insurance policy with a monthly disability benefit of $4,000. The Paul Revere policy was issued to plaintiff on or about January 24, 1989, accompanied by a transmittal letter requesting that plaintiff review the policy and contact Fisher if plaintiff had any questions regarding his coverage.

The Paul Revere policy as issued did not contain a provision that would increase the amount of disability payments in order to meet increases in inflation. Fisher stated in a sworn affidavit that he explained to plaintiff prior to the issuance of the policy that it did not contain a cost of living adjustment. However, plaintiff stated in a

sworn affidavit that during negotiation of the policy, Fisher told plaintiff that plaintiff was purchasing a "premier" policy, which was the "best" policy available at that time. Plaintiff alleged that when the policy was issued to him in January 1989, he "skimmed" through it in order to confirm that the monthly disability benefit was for $4,000 as requested. When plaintiff "skimmed" through the policy, he also observed references to benefit adjustments related to the "Consumer Price Index."

At the time plaintiff purchased and was issued the Paul Revere policy, he was also covered under a separate disability insurance policy issued to him by Minnesota Mutual Life. The Minnesota Mutual Life policy contained a provision entitled, "Monthly Income Benefit Escalator Agreement," that had the effect of increasing monthly income benefits if the insured suffered an extended period of disability. As specifically outlined in the Minnesota Mutual Life policy, plaintiff paid an additional annual premium for the "Benefit Escalator Agreement."

Plaintiff paid all premiums for the Paul Revere policy from January 1989 through March 27, 1993, when plaintiff sustained a heart attack. In November 1993, plaintiff began receiving monthly disability payments under the Paul Revere policy in the amount of $4,800. Plaintiff alleges that when the monthly disability payment he was receiving under the Paul Revere policy did not increase in October 1994, Fisher informed plaintiff that Fisher had not obtained a policy with a provision for an annual increase of the monthly benefit to meet inflation rates.

On May 20, 1997, plaintiff filed an amended complaint (complaint) in the trial court. Count I of plaintiff's complaint for breach of contract alleged that Fisher breached his duties to plaintiff by failing to procure and provide a disability policy which contained a provision that would annually increase the payable amount of monthly disability benefits to meet the rate of inflation. Count II of plaintiff's complaint for negligent misrepresentation alleged that, as defendants' client, plaintiff reasonably relied to his detriment on Fisher's representation that the Paul Revere policy would include such a provision.

Defendants filed a motion to dismiss plaintiff's complaint, arguing that the statute of limitations barred the action because it was filed seven years and two months after plaintiff received the policy. Plaintiff filed a response to defendants' motion to dismiss, arguing that the court apply the discovery rule and determine that the applicable five-year statute of limitations had not run as a matter of law because there was a genuine issue of material fact as to when plaintiff knew or should have known the terms of the policy. In their reply, defendants argued that when plaintiff received the policy on or about January 24,

1989, he reasonably knew or should have known, for the purpose of commencing the limitations period under the discovery rule, that the policy did not contain a provision for an annual increase of benefits to meet the inflation rate. Therefore, defendants argued, the statute of limitations barred plaintiff's cause of action which accrued on January 24, 1989.

At the hearing on defendants' motion to dismiss, plaintiff argued that his complaint stated a cause of action because there were questions of fact as to whether plaintiff should have known of the alleged defect in the policy when he "skimmed" it in January 1989. For example, plaintiff argued that a jury may determine that when plaintiff saw a reference to the "Consumer Price Index" in the policy, he reasonably could have interpreted that term to provide for the monthly benefit increase he allegedly requested. Defendants argued that there was no question that plaintiff should have known of any alleged deficiency in the policy when he received it because, based on *Furtak v. Moffett*, 284 Ill. App. 3d 255, 671 N.E.2d 827 (1996), plaintiff clearly had a duty to read and understand the contents of the policy.

On August 8, 1997, the trial court found that because the language in the Paul Revere policy was not defective and was clearly set out for plaintiff, the case was "not a Discovery Rule matter." Specifically, the court stated:

> "There's nothing defective in the policy. It's not like a fireplace that sets fire to the house at some point later on. It's nothing that is hidden or defective.
>
> * * *
>
> And I think that the holder of a policy, whether he or she is suing the broker or the insurance company, has a duty to realize what's in the policy and what is not.
>
> To allow the opposite rule, to allow somebody to say, well, it's long and it's complicated would simply do away with the Statute of Limitations and leave brokers or companies liable for years and years and years until some event occurred that triggered some financial shortfall."

Accordingly, the trial court dismissed plaintiff's complaint pursuant to section 2—619(a)(5) of the Act based on plaintiff's failure to file his complaint within the statute of limitations. This appeal followed.

Plaintiff contends that "in an action by an insured against his broker/agent, there is no presumption of knowledge of breach of contract." Specifically, plaintiff argues that the trial court erred in determining as a matter of law that plaintiff was presumed to know and understand the terms of the Paul Revere policy (policy) and that he should have known of the breach at the time he received the policy

on January 24, 1989. Plaintiff argues that there are material questions of fact as to when he knew or should have known of the defect in the policy and whether he was contributorily negligent for failing to read and understand the terms of the policy. Defendant contends that the issue here is not whether plaintiff was contributorily negligent in failing to read and understand the policy but, rather, whether plaintiff pleaded sufficient facts to avoid the application of the statute of limitations.

■ A trial court should not dismiss an action on the pleadings unless it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to relief. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 504, 565 N.E.2d 654 (1990). When the legal sufficiency of a complaint is challenged by a section 2—619 motion to dismiss, all well-pleaded facts and reasonable inferences are accepted as true (*Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 84-85, 651 N.E.2d 1132 (1995)), and a reviewing court must determine whether the allegations set forth in the complaint, interpreted in a light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. *Burdinie*, 139 Ill. 2d at 505.

■ Illinois courts have repeatedly held that when an insured sues his or her insurer after failing to note a discrepancy between the policy issued and received and the policy requested or expected, the insured will be bound by the contract terms because he or she is under a duty to read the policy and inform the insurer of any discrepancy so that a prompt correction may be made without prejudicing the rights of either party. *Black v. Illinois Fair Plan Ass'n*, 87 Ill. App. 3d 1106, 1110, 409 N.E.2d 549 (1980). See also *Foster v. Crum & Forster Insurance Cos.*, 36 Ill. App. 3d 595, 345 N.E.2d 49 (1976); *Furtak*, 284 Ill. App. 3d 255. Although this court has recognized that laymen may not read their insurance policies as common practice, we have not excused plaintiffs from their burden of knowing the contents of the policy when there are no allegations that the language of the policy was ambiguous. *Foster*, 36 Ill. App. 3d at 598.

■ On the other hand, we have also recognized that there is a distinction between an action by the insured against his *insurer*, which issues the policy, and an action by an insured against his *agent*, who procures the policy. *Black*, 87 Ill. App. 3d at 1110-11. The relationship between an insured and his broker, acting as the insured's agent, is a fiduciary one. Illinois law places a burden on an insurance broker to exercise competence and skill when he or she renders the service of procuring insurance coverage. *Economy Fire & Casualty Co. v. Bassett*, 170 Ill. App. 3d 765, 771-72, 525 N.E.2d 539 (1988). If a broker

does not follow instructions or if the policy obtained is materially defective through the agent's fault or if the principal suffers damage due to any mistake or act of commission or omission of the agent which constitutes a breach of duty to the principal, the agent is liable to the principal for any loss sustained thereby. *Black*, 87 Ill. App. 3d at 1110, citing *Evan L. Reed Manufacturing Co. v. Wurts*, 187 Ill. App. 378, 385-86 (1914).

In *Black*, the plaintiffs were issued a fire insurance policy that was procured by their agent. In filling out the application form, the broker mistakenly inserted an incorrect address. After "glancing" at the contract but failing to detect the address error, the plaintiff signed the application in blank at the broker's direction. After a fire occurred on the premises that were intended to be insured by the policy, the insurance company denied liability. The plaintiffs brought an action seeking to recover damages from the broker due to his alleged negligence in obtaining insurance on the wrong property. The trial court held that the plaintiffs were negligent as a matter of law because they failed to note the address error on the face of the policy when they received it. *Black*, 87 Ill. App. 3d at 1110.

On appeal, the *Black* court found that the broker was not entitled to judgment as a matter of law, stating that the critical difference between insurer-insured cases and broker-insured cases was that in the former, the insured "is attempting to deny the effectiveness of a part of the writing." *Black*, 87 Ill. App. 3d at 1112. Therefore, a duty to read the contract and report discrepancies is imposed on the insured. However, a suit between the insured and his broker "does not depend upon a modification of the terms of the written contract to the prejudice of the insurer" but, rather, involves only a matter of proof that the broker negligently performed his duty to procure a specified insurance policy. *Black*, 87 Ill. App. 3d at 1111. The *Black* court held that, in the latter case, "the insured's failure to read the contract and point out errors in its basic terms, while arguably evidence of the insured's contributory negligence [citations], is never contributory negligence as a matter of law." *Black*, 87 Ill. App. 3d at 1111. See also *Bassett*, 170 Ill. App. 3d at 775 (when the insured sued his broker for negligent failure to procure proper insurance and breach of the broker's fiduciary duty, the court held that the insured's failure to read the policy was not an absolute bar to his right to recover against the broker).

■ In the present case, plaintiff argues, based on *Black*, that his alleged failure to read and know the terms of the policy and to bring discrepancies to the attention of defendants is, at best, some evidence of contributory negligence, but not contributory negligence as a matter of law. Because knowledge of the alleged breach by the plaintiff

here, as in *Black*, cannot be imputed or presumed, the trial court should not have determined as a matter of law that plaintiff knew or reasonably should have known of the Paul Revere policy deficiency when he received the policy in January 1989. Plaintiff pled facts in his complaint which, when construed in a light most favorable to him, created a genuine issue of material fact as to whether defendants breached their fiduciary duty as brokers in procuring the policy, *i.e.*, plaintiff's allegation that Fisher told him that the policy was a "premier" policy, which was the "best" policy available at the time. We find, therefore, that the trial court erred in granting defendants' section 2—619 motion to dismiss because a genuine issue of material fact existed as to *when* plaintiff knew or should have known that the policy was defective. Based upon *Black* and *Bassett*, we find that the trial court erred in holding as a matter of law that plaintiff had a duty to "realize what's in the policy and what is not," regardless of "whether [plaintiff] is suing the broker or the insurance company."

We briefly note that we find no merit in defendants' argument that *Black* is "clearly distinguishable" from the case at bar because the issue in this case was not whether plaintiff was contributorily negligent but, rather, whether plaintiff pled facts to avoid strict application of the statute of limitations. The *Black* holding—that the trial court had not properly considered the issue of the insureds' reliance on their broker by holding as a matter of law that the insureds had a duty to read the policy—applies regardless of the specific "issue" before the trial court.

In accordance with our holding that an insured's failure to read and understand the terms of a policy procured by his broker is not an absolute bar to the insured's right to recover against his broker for breach of the broker's fiduciary duty, we also find that the trial court erred in dismissing plaintiff's complaint as untimely under the statute of limitations because the question of when the limitations period began could not be determined until the question of when plaintiff should have known of the alleged deficiency in the policy was determined by the trier of fact. Accordingly, we reverse the trial court's order dismissing plaintiff's complaint and remand this cause for further proceedings consistent with this order. In light of our decision, we need not address plaintiff's remaining argument that section 2—619 of the Act prohibits the trial court from resolving factual questions where the nonmovant has filed a jury demand.

Reversed and remanded.

LEAVITT, P.J., and CAHILL, J., concur.