**SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff,**

v.

**R.D. KUSHNIR & CO., Defendant.**

**Securities Investor Protection Corporation, as Trustee for the Liquidation of R.D. Kushnir & Co., Plaintiff,**

v.

**Paul E. Carney, Defendant.**

**Nos. 99 A 858 SIPA, 01 A 00524.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 28, 2001.

Melanie Rovner Cohen, Altheimer & Gray, Chicago, IL, for SIPC.

Steven Rotunno, Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, Chicago, IL, for Paul E. Carney.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff Securities Investor Protection Corporation ("SIPC"), as Trustee for the Liquidation of R.D. Kushnir & Co.

("RDK"), has moved for Entry of Order and Judgment of Default against Defendant Paul E. Carney ("Carney") in Adversary No. 01 A 00524. The Court now makes and enters the following Findings of Fact and Conclusions of Law based upon the defaulted allegations, and materials admitted as part of Plaintiff's prove-up following the Defendant's default:

### FINDINGS OF FACT [1]

#### Jurisdiction

1. On June 2, 1999, SIPC initiated the instant liquidation proceeding of RDK by filing an application for protective decree pursuant to Section 78eee(b)(1) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"). Affidavit of Karen A. Caplan ("Caplan Aff.") Ex. A. By order dated July 14, 1999, the District Court (Judge Shadur), *inter alia:* (i) found that the customers of RDK were in need of the protection afforded by SIPA; (ii) appointed SIPC Trustee for the liquidation of the business of RDK pursuant to SIPA § 78eee(b)(3); and (iii) removed this case to this Court pursuant to SIPA § 78eee(b)(1). Caplan Aff. Ex. B. 2.

2. This Court has jurisdiction over this adversary proceeding pursuant to SIPA § 78eee(b)(4) and 28 U.S.C. § 157(b). This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) to the extent that it is an asset of the estate, and seeks recovery on behalf of the estate. Venue in this Court is founded upon 28 U.S.C. § 1409, in that this proceeding arises in or is related to the RDK liquidation proceeding, Case No. 99 A 858 SIPA.

3. SIPC filed the above-captioned complaint against Carney on June 1, 2001, alleging: Count I—Breach of Duty as Agent; and Count II—Carney's Fraudu-

lent Misrepresentations to RDK (the "Complaint"). Docket # 1; Caplan Aff. Ex. C.

4. Carney resides at 5 Cedar Court, Apt. 6, Vernon Hills, Illinois 60061. Caplan Aff. Ex. D p. 3.

5. Carney was served with the Summons and Complaint at his residence by First Class United States Mail on June 1, 2001 in accordance with Bankruptcy Rule 7004(b)(1). Caplan Aff. ¶ 11, Ex. E, Ex. F.

6. As indicated on the Summons, Carney was to file an answer or other responsive pleading on or before July 6, 2001. Caplan Aff. Ex. E. To date, Carney has failed to answer or otherwise plead to the Complaint, he has not appeared in this case *pro se,* and no counsel has entered an appearance on his behalf. *See* Docket.

7. Carney is neither an infant nor incompetent. Caplan Aff. Ex. H ¶ 38, Ex. I p. 16.

#### Parties

8. SIPC is a non-profit membership corporation created by Congress and organized under SIPA. SIPC's members generally consist of: (i) all persons registered as broker-dealers under Section 15 of the Securities Exchange Act of 1934, 15 U.S.C. § 78o *et seq.* (the "1934 Act"); and (ii) all persons who are members of a national securities exchange. Caplan Aff. ¶ 7.

9. At all times relevant to the Complaint, RDK was a member of SIPC. Caplan Aff. ¶ 9.

10. Pursuant to SIPA § 78fff–1 and 11 U.S.C. § 323(a), SIPC, as Trustee, is the representative of the RDK estate.

11. SIPC filed the Complaint in its capacity as Trustee for the estate of RDK. Caplan Aff. Ex. C ¶ 5.

---

1. To the extent any of the proposed findings of fact are deemed not to be findings of fact, they shall be deemed conclusions of law, and vice versa.

12. Carney was hired by RDK as a registered representative on or about February 5, 1997. Carney held the title of Vice President—Investments and Senior Options Strategist. At all times that Carney was employed by RDK, Carney was licensed by the securities regulatory authorities and carried Series 7 and Series 63 licenses. Caplan Aff. ¶ 13, Ex. C ¶ 11, Ex. I p. 4.

13. RDK was an "introducing" securities broker-dealer with its primary place of business in Northbrook, Illinois. RDK did not itself carry or maintain accounts of customers. Instead, RDK introduced its customers to a "clearing broker," Wexford Clearing Services Corporation ("Wexford"), which opened and maintained accounts for the customers introduced by RDK. Caplan Aff. ¶ 8, Ex. C ¶ 8.

14. At all times relevant to the Complaint, RDK was a member of the National Association of Securities Dealers ("NASD"), and was subject to the rules and regulations of the Securities Exchange Commission ("SEC"). Caplan Aff. ¶ 9, Ex. C ¶ 9.

15. Carney invoked his Fifth Amendment privilege with respect to his employment and customers at RDK. Caplan Aff. Ex. D pp. 6–7.

### Carney's Unauthorized Transactions

16. In the latter half of 1997, Carney began a pattern and practice of making unauthorized, highly speculative purchases and sales of options for his customers. Caplan Aff. Ex. C ¶ 15, Ex. I p. 5.

17. Carney exercised discretion over his customers' accounts despite the fact that such accounts were established as non-discretionary. Caplan Aff. Ex. C ¶ 14; cf. Caplan Aff. Ex. G ¶¶ 7–8, Ex. H ¶¶ 8–10.

18. Carney transferred options trades among customer accounts and RDK proprietary accounts without authorization. Caplan Aff. ¶ 15, Ex. C ¶¶ 15–17, Ex. G ¶ 32, Ex. H ¶¶ 25–26.

19. When asked under oath whether he moved trades from customers' accounts to other RDK accounts, or vise versa, Carney invoked his Fifth Amendment privilege. Caplan Aff. Ex. J pp. 59–60, 82–84.

20. When asked under oath whether he effected unauthorized trades in customers' accounts, Carney invoked his Fifth Amendment privilege. Caplan Aff. Ex. I p. 8, Ex. J p. 82.

21. Carney engaged in unauthorized trading in customer accounts even after receiving instructions from his customers to cease trading therein. Caplan Aff. Ex. C ¶ 15, Ex. G ¶¶ 11, 17–20, Ex. H ¶ 21, Ex. I p. 7.

22. When asked under oath whether he was expressly instructed not to trade in certain customer accounts, but traded in those accounts anyway, Carney invoked his Fifth Amendment privilege. Caplan Aff. Ex. J pp. 84–87.

23. Carney intentionally concealed his unauthorized transactions from RDK. Caplan Aff. Ex. C ¶ 19.

24. When asked under oath whether he embarked on a course of action to continue to trade to cover substantial losses in customer accounts and to conceal those losses, Carney invoked his Fifth Amendment privilege. Caplan Aff. Ex. J pp. 85–86.

25. These unauthorized trades caused direct losses to both the customers and to RDK, which was responsible for the customers losses and the losses in the firm proprietary accounts. Caplan Aff. Ex. G ¶¶ 36, 43, 45, 47–49, Ex. H ¶¶ 12–15, 19, 21, 26, 31–32.

26. Through Carney's unauthorized trading activities, RDK customers were deprived both cash and securities that should have been in their accounts. Ca-

plan Aff. Ex. G, Ex. H. These losses were and are the responsibility of RDK. Caplan Aff. Ex. C ¶ 20.

### False and Misleading Financial Statements

27. Carney delivered or transmitted purported profit and loss ("P & L") statements to at least two of his customers and advised them that the P & L statements reflected, accurately and completely, the transactions effected in their accounts. However, these P & L statements were both false and misleading. Caplan Aff. Ex. C ¶ 21, 22, Ex. G ¶¶ 9, 10, 12, 29–31, Ex. H ¶¶ 10, 11, 18, 19, 21, Ex. I pp. 6, 16 ("He knowingly, deliberately and repeatedly lied to his customers regarding the value of their accounts. To bolster these falsehoods, Carney prepared false profit and loss reports, which he gave to his customers over several months") Ex. I p. 16.

28. When asked under oath whether he provided false or misleading financial statements to Mr. Olson, Carney invoked his Fifth Amendment privilege. Caplan Aff. Ex. I p. 6, Ex. J pp. 66–67, 83, 85–86.

29. Carney delivered correspondence to customers on RDK letterhead falsely representing the values of the securities margin interest and such accounts. Caplan Aff. Ex. C ¶ 23, Ex. G ¶¶ 21, 24, 28, 29, Ex. H ¶¶ 16–19.

### Exposure of Carney's Wrongdoing

30. On or about March 19, 1998, Carney submitted a written statement to Richard Kushnir, the principal of RDK, admitting that he had misled RDK customers and effected unauthorized trades on their behalf. Caplan Aff. ¶ 22, Ex. C ¶ 25, Ex. K.

31. In his signed statement, Carney admitted that "[i]n an instant of extremely poor judgment I began misleading my clients concerning how the trading was going and where their accounts stood."

Caplan Aff. Ex. K, p. 2. Carney acknowledged that admitted "mistakes I have made for months now," Caplan Aff. Ex. K, p. 1. As early as November 1997, "[t]he phones [sic] calls began to come in with clients questioning on how their accounts were sizeable in one month and decreased by half the next." Caplan Aff. Ex. K, p. 2. Carney "began to fear not just for my career, but for the financial stability of the firm, (from costing everybody their jobs to bringing down the firm)." Caplan Aff. Ex. K, p. 3. He continued, "[t]he bottom line is I have lied to my clients concerning their account values. Most importantly, to Mike Clauer and Larry Olson. They have no knowledge of the substantial losses their accounts have incurred." Caplan Aff. ¶ 23, Ex. K p. 3.

32. On or about February 1, 2000, Olson obtained a judgment against Carney in the United States District Court for the Northern District of Illinois in excess of $5 million for violations of federal and state securities laws, conversion, false statements, breach of contract and various counts of fraud. Caplan Aff. ¶ 25, Ex. C ¶ 26, Ex. H.

33. In addition, the NASD conducted an investigation of Carney and his wrongdoings at RDK, and penalized Carney by: a) requiring him to make restitution to customers defrauded by him; and b) banning him for life from acting as a securities broker. Caplan Aff. ¶ 26, Ex. C ¶ 27, Ex. I.

34. In 1998, several account holders, initiated arbitration proceedings before the NASD against RDK, Carney, Richard Kushnir and others to recoup over $2 million in losses arising out of Carney's misconduct. Caplan Aff. ¶ 27, Ex. N. The customers' claims arise out of the same set of facts at issue in SIPC's Complaint. Caplan Aff. Ex. N.

35. On June 30, 1998, RDK ceased retail brokerage operations, and substantially all of RDK's customers and business were transferred to another introducing brokerage firm. Caplan Aff. ¶ 28, Ex. C ¶ 30.

## CONCLUSIONS OF LAW

■ 36. For purposes of a motion for entry of default judgment, the Court may accept as true all well pleaded allegations in the Complaint, and all reasonable inferences drawn from such facts, as true. *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir.1994).

■ 37. Though it is unnecessary to rely on the principle here, authority in this Circuit has held that invocation of the Fifth Amendment in a civil context invites inference that the witness' testimony would be adverse to his interests. *Harris v. City, et al.*, 266 F.3d 750 (7th Cir.2001); *Central States, S.E. & S.W. Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 872 (7th Cir.1998), *citing Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Matter of Maurice*, 73 F.3d 124, 126 (7th Cir.1995).

### Carney Breached His Duty as an Agent of RDK

■ 38. An agent is subject to liability for loss caused to the principal by any breach of duty. *Perelman v. Fisher*, 298 Ill.App.3d 1007, 233 Ill.Dec. 88, 700 N.E.2d 189, 192 (1998); Restatement of Agency § 401.

■ 39. As an employee and as a registered representative of RDK, Carney owed certain duties to RDK as its principal, including but not limited to:

a. a duty to act with standard care, and with the skill which is standard for the kind of work which he is employed to perform and, in addition, to exercise any special skill that he has;

b. a duty not to conduct himself with such impropriety that he brings disrepute upon his principal or the business in which he is engaged;

c. a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which the principal would desire to have; and

d. a duty to act in accordance with the principal's manifestation of consent when acting in the principal's affairs.

Restatement of Agency §§ 379–81, 383.

■ 40. Carney breached these duties by: a) effecting unauthorized transactions in RDK customers' accounts resulting in their being deprived of cash and securities that should have been in their accounts; b) generating losses in RDK's Error Account; c) concealing customer complaints from RDK; d) disseminating false written financial information to customers; e) misreporting the status of customer accounts to RDK; f) exposing RDK to the risk of financial failure for violation of the SEC's net capital rules; and g) ultimately destroying RDK's business. Caplan Aff. ¶ 15, Ex. C ¶ 33.

41. As a licensed registered representative, Carney knew or should have known that his conduct was in contravention of applicable securities laws, and that he was placing RDK at substantial risk of significant financial loss as a result of his trading activities. Caplan Aff. ¶ 16, Ex. C ¶ 34, Ex. I p. 13.

42. Carney's case is egregious, involving sustained, repeated violations of the fundamental duty of fair dealing and honesty that he owed his customers. Caplan Aff. Ex. I p. 12–13.

43. By reason of his conduct in breach of the duties enumerated in paragraph 39 above, and as a result of Carney's knowing violation of securities laws and procedures,

Carney caused large losses to RDK by causing it to be liable to customers in large amounts. *See* Caplan Aff. ¶ 28, Ex. H ¶¶ 31–32, Ex. O.

44. Carney is liable to RDK for the damages caused by his breaches of duty, and is liable to SIPC as Trustee for the administrative costs of the liquidation of RDK.

### Carney Made Fraudulent Misrepresentations to RDK

45. Carney made false statements to RDK in that he represented that each of the trades he was effecting in customers' accounts were authorized and approved by such customers. Caplan Aff. ¶ 17.

46. Carney omitted to state facts material to RDK's operations when he failed to report the complaints of his customers and the existence and extent of margin calls to RDK. Caplan Aff. ¶ 16.

47. Carney intended that the personnel in RDK's trading room rely upon the order tickets submitted for filling and his designation of the account(s) to which each such transaction was to be posted. Caplan Aff. ¶ 17; Ex. C ¶ 41.

48. RDK so relied upon Carney's representations in placing orders and designating trades to specific RDK and customer accounts. Caplan Aff. ¶ 17, Ex. C ¶ 41.

49. The reliance of RDK's trading room personnel upon Carney's directions to the order desk was reasonable and foreseeable, as placing trades was within the scope of Carney's employment as a registered representative. Caplan Aff. ¶ 18, Ex. C ¶ 42.

50. As a result of RDK's reliance upon the validity of the trade orders submitted for execution by Carney, RDK effected such trades. Caplan Aff. ¶ 18, Ex. C ¶ 43.

51. RDK suffered losses and liability to its customers of at least $2 million when the trades later proved to be unauthorized by RDK customers. Caplan Aff. ¶ 29, Ex. C ¶ 43.

### Consequences to RDK

52. As a result of Carney's misconduct, RDK became liable to the customers who were deprived of cash and securities that should have been in their accounts, and SIPC, as Trustee of RDK's estate, incurred damages in an amount no less than $1,821,140.62. Caplan Aff. ¶ 29, Ex. G ¶¶ 33–49, Ex. O.

### *Entry of a Judgment of Default Against Carney is Warranted*

53. Because Carney has failed to respond to the Complaint, entry of a separate Order of Default was warranted and entered under FRCP 55(a), made applicable to these proceedings by FRBP 7055.

54. Pursuant to the foregoing Findings of Fact and Conclusions of Law, Final Judgment will be entered this date.