# Illinois Official Reports

## Appellate Court

---

**Austin Highlands Development Co. v. Midwest Insurance Agency, Inc.,**
**2020 IL App (1st) 191125**

---

| | |
|---|---|
| Appellate Court Caption | AUSTIN HIGHLANDS DEVELOPMENT COMPANY, an Illinois Corporation, Plaintiff-Appellant, v. MIDWEST INSURANCE AGENCY, INC., an Illinois Corporation, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>No. 1-19-1125 |
| Filed | January 30, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-10752; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Richard C. Jones Jr. and Carolyn D. Strahammer, of Richard Jones & Associates, Ltd., of Mt. Prospect, for appellant.<br><br>Jessica K. Burtnett and Jessica N. Kull, of Traub Lieberman Straus & Shrewsberry, of Chicago, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Lampkin and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff Austin Highlands Development Company (Austin) sued defendant Midwest Insurance Agency, Inc. (Midwest), for failing to procure an insurance policy that protected Austin against claims that were later raised in a federal class action lawsuit against the company. On Midwest's motion to dismiss, the circuit court found that Austin failed to file its lawsuit against Midwest within the time period mandated by law and accordingly dismissed Austin's complaint with prejudice. On appeal, Austin contends that the court erroneously dismissed its complaint as untimely and the law providing for the statute of limitations is unconstitutional. For the reasons that follow, we affirm.

¶ 2                                         I. BACKGROUND

¶ 3     Austin acts as the agent for entities that own various apartment complexes in the Chicagoland area, and Midwest procures insurance for various companies. In November 2015, Midwest acted as the exclusive agent for Austin for the purposes of procuring insurance for the apartment complexes and for the business conducted by Austin and its related entities. To this end, Midwest procured an insurance policy for Austin for a one-year period, beginning on November 25, 2015, issued by Commerce and Industry Insurance Company, a company affiliated with American International Group, Inc. (AIG). The policy was a "Prime Express Commercial Excess Liability Policy with Crisis Response" and issued on November 16, 2015. The policy document stated that the "producer" was RT Specialty, LLC.

¶ 4     In March 2016, Austin was sued in a federal class action lawsuit for allegedly violating Illinois statutes related to tenant security deposits. The lawsuit was later certified as a class action. Upon receiving notice of the lawsuit, Austin delivered the complaint to Midwest to forward to AIG. On or around August 25, 2016, Midwest informed Austin that its insurance policy did not provide coverage for the causes of action alleged in the federal lawsuit. According to Austin, because of the lack of coverage, it had to expend over $300,000 to settle the lawsuit.

¶ 5     On October 4, 2018, Austin sued Midwest, alleging that Midwest was "an insurance producer" under section 2-2201 of the Code of Civil Procedure (Code) (735 ILCS 5/2-2201 (West 2018)) and, therefore, was required to exercise ordinary care and skill in procuring, binding, renewing, or placing insurance coverage as requested by Austin. According to Austin, Midwest allegedly breached that duty when it failed to procure an insurance policy that provided protection for claims like those brought in the federal lawsuit against the company.

¶ 6     Midwest responded by filing a combined motion to dismiss under section 2-619.1 of the Code (*id.* § 2-619.1), highlighting that a cause of action against an insurance producer, such as itself, must be filed within two years of when the cause of action accrues and positing that a cause of action accrues against an insurance producer when the insured received the insurance policy at issue. Midwest argued that, because Austin sued Midwest more than two years after Austin received the policy at issue, the statute of limitations had already elapsed. Austin responded that, because Midwest was its agent, Midwest was not an insurance producer under the law and its cause of action against Midwest did not accrue when it received the policy. According to Austin, it therefore timely filed its lawsuit against Midwest. Austin also argued that section 13-214.4 of the Code (*id.* § 13-214.4), which provides for the statute of limitations against insurance producers, was unconstitutional special legislation.

¶ 7        On May 21, 2019, the circuit court entered a written order on Midwest's motion to dismiss. Initially, the court determined that Midwest was an " '[insurance] producer' " under the law and the statute of limitations to file a cause of action against an insurance producer was two years from the date the cause of action accrues. The court asserted that, under *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, a cause of action against an insurance producer accrues when the insured receives the policy at issue. The court next found that Austin received the policy in November 2015 and did not file its lawsuit until October 2018. As a result, the court concluded that the statute of limitations had elapsed before Austin filed its lawsuit, and it accordingly dismissed Austin's complaint with prejudice. The court did not address Austin's challenge to the constitutionality of the statute of limitations. Austin timely appealed.

¶ 8                                    II. ANALYSIS

¶ 9        On appeal, Austin contends that, because Midwest acted as its broker and worked for it, Midwest was not an insurance producer under the law and its cause of action against Midwest did not accrue when it received the policy at issue. Austin therefore argues that its lawsuit against Midwest was not untimely.

¶ 10        Midwest filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)), citing both sections 2-615 and 2-619(a)(5) of the Code (*id.* §§ 2-615, 2-619(a)(5)). Relevant here is only the portion of that motion based on section 2-619(a)(5). A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts that certain defects, defenses, or other affirmative matters that appear outside the pleadings act to defeat the claims. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. Specifically, under subsection (a)(5), dismissal is proper when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). In analyzing such a motion, the circuit court is required to accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *Sandholm*, 2012 IL 111443, ¶ 55. All pleadings and supporting documents must be construed in the light most favorable to the nonmoving party. *Id.* The critical inquiry on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review the circuit court's dismissal *de novo*. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 11                        A. Insurance Producers and Statute of Limitations

¶ 12        Under Illinois insurance law, there are two general types of individuals who act as the conduits between the insured and the insurer: insurance brokers and insurance agents. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 19. An insurance broker is an individual or business entity

> "who procures insurance and acts as a middleman between the insured and the insurer, who solicits insurance business from the public under no employment from any special company and who, having secured an order, places the insurance with the company selected by the insured, or in the absence of any selection by the insured, with a company he selects himself." (Internal quotation marks omitted.) *Id.*

In other words, an insurance broker provides insurance policies for their customers from multiple companies. *Krop*, 2018 IL 122556, ¶ 23. On the other hand, an insurance agent is an individual or business entity "who has a fixed and permanent relation to the companies he represents and who has certain duties and allegiances to such companies." (Internal quotation marks omitted.) *Skaperdas*, 2015 IL 117021, ¶ 19. Within the category of insurance agents, there are also captive agents, who "work for one insurance company exclusively." *Krop*, 2018 IL 122556, ¶ 23; see also *Skaperdas*, 2015 IL 117021, ¶ 38 ("Captive agents are contractually bound to sell only their own company's insurance.").

¶ 13    Historically, insurance brokers owed a fiduciary duty to the insured, while insurance agents owed a fiduciary duty to the insurer. *Skaperdas v. Country Casualty Insurance Co.*, 2013 IL App (4th) 120986, ¶ 21, *aff'd*, 2015 IL 117021. However, in 1997, the Illinois legislature enacted Public Act 89-638 (codified under the heading "Insurance Placement Liability"), which added section 2-2201 to the Code. See Pub. Act 89-638, § 5 (eff. Jan. 1, 1997) (adding 735 ILCS 5/2-2201). Section 2-2201 provides that an "insurance producer *** shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a) (West 2018). "This statute prevents any insurance producer from being held to the fiduciary standard, except in a narrow set of circumstances" (*Krop*, 2018 IL 122556, ¶ 28), *i.e.*, those involving the appropriation of money. See 735 ILCS 5/2-2201(b) (West 2018). That is to say that section 2-2201 of the Code has removed the common law fiduciary duty standard applicable to an "insurance producer" and required an "insurance producer" to exercise only ordinary care.

¶ 14    Though section 2-2201 uses the term "insurance producer," it does not define the term. *Krop*, 2018 IL 122556, ¶ 15. However, our supreme court determined that the definition of "insurance producer" found in the Illinois Insurance Code should be imported in as the definition of "insurance producer" found in section 2-2201 of the Code. *Skaperdas*, 2015 IL 117021, ¶¶ 29, 43. Under the Illinois Insurance Code, an " '[i]nsurance producer' " is any individual or business entity "required to be licensed under the laws of [Illinois] to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10 (West 2018). Because of this broad definition, our supreme court has concluded that anyone who is required to be licensed to sell, solicit, or negotiate insurance, including both agents and brokers, are considered insurance producers. *Skaperdas*, 2015 IL 117021, ¶¶ 29, 43. As a result, except in a narrow set of circumstances involving the appropriation of money, insurance agents and insurance brokers are only required to "exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a), (b) (West 2018).

¶ 15    This standard of care is important because it affects the statute of limitations for lawsuits filed against insurance producers. See generally *Krop*, 2018 IL 122556. Under section 13-214.4 of the Code (735 ILCS 5/13-214.4 (West 2018)),

> "[a]ll causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer *** concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues."

Recently, in *Krop*, 2018 IL 122556, ¶ 1, our supreme court addressed the question of when a cause of action against an insurance producer accrues for purposes of this statute of limitations. The court determined that negligent procurement claims, like the one Austin has alleged

against Midwest in the instant lawsuit, are torts arising out of contractual relationships. *Id.* ¶ 35. Because of this characterization, the date a cause of action accrues for a negligent procurement claim is when the breach occurs, not when the damages occur. *Id.* And according to our supreme court, the breach occurs the moment the insurance producer delivers the allegedly deficient policy. *Id.* The court recognized that the discovery rule generally delays the start of the "limitations period until the plaintiff should discover the *injury*" but found "insurance customers are injured as soon as an insurance producer delivers a policy that does not conform to the customers' request." (Emphasis in original.) *Id.*

¶ 16    Our supreme court's rationale for finding that insureds should discover their injury, *i.e.*, a deficient insurance policy, upon receipt of the policy was based on the fact that insurance producers do not owe their customers a fiduciary duty. See *id.* ¶ 29 ("Because a claim for negligent failure to procure insurance does not involve a fiduciary duty, insurance customers' obligation to read their policies controls."). The court explained that insureds "generally know their own goals better than their insurance agent does, but determining if a policy achieves those goals will be difficult when customers do not read the policy." *Id.* Moreover, "[e]xpecting customers to read their policies and understand the terms incentivizes them to act in good faith to purchase the policy they actually want, rather than to delay raising an issue until after the insurer has already denied coverage." *Id.* Thus, following *Krop*, a cause of action against an insurance producer for negligent procurement generally accrues when the insured receives the insurance policy. *Id.* ¶ 38. Our supreme court did note a "narrow set of cases" where a cause of action would not accrue upon receipt of the insurance policy, but the insured would have to plead facts showing that it "reasonably could not be expected to learn the extent of coverage simply by reading the policy." *Id.* ¶¶ 36, 38. Such cases may occur where a policy contains contradictory provisions, where a policy fails to define key terms or where "the circumstances that give rise to the liability may be so unexpected that the typical customer should not be expected to anticipate how the policy applies." *Id.* ¶ 36.

¶ 17                            B. The Circuit Court's Dismissal

¶ 18    With that background in mind, we turn to the instant case. Initially, we agree with the circuit court that Midwest is an insurance producer under the Code. Based on Austin's complaint, where it asserted that Midwest worked for Austin to procure the proper insurance coverage for its business, Midwest is an insurance broker under the law. And an insurance broker is an insurance producer. See *Skaperdas*, 2015 IL 117021, ¶¶ 29, 43. Though such a finding comports with Austin's complaint, where it alleged that Midwest was "an insurance producer" under the Code, Austin disavowed that assertion later in proceedings in the circuit court, as well as on appeal. But regardless of how Austin has characterized Midwest below and now on appeal, our supreme court in *Skaperdas* made clear that anyone required to be licensed to solicit, sell, or negotiate insurance products is an insurance producer. See *id.* Thus, Midwest is an insurance producer under the Code, even though the insurance policy at issue stated that RT Specialty, LLC, was the "producer." Because Midwest is an insurance producer under Illinois law, the two-year statute of limitations for negligent procurement claims against an insurance producer applied to the instant lawsuit. See 735 ILCS 5/13-214.4 (West 2018).

¶ 19    We now turn to whether Austin filed the instant lawsuit before the two-year statute of limitations expired. Midwest procured the allegedly deficient insurance policy through a company affiliated with AIG, and the policy was issued to Austin on November 16, 2015.

Although the record does not contain the exact date that Austin received the policy, we can presume that it did so shortly after the policy was issued, as Austin has not suggested that it received the policy much later. See *Krop*, 2018 IL 122556, ¶ 38 n.3 (highlighting that, while "[t]he exact date that [the insured] received a copy of the [allegedly deficient insurance] policy does not appear in the record," the insured did not "suggest" that it "received a copy much later" than the date it was issued). Thus, Austin received the policy at issue around November 16, 2015, but certainly in late fall 2015, meaning the negligent procurement cause of action against Midwest accrued at this time. It therefore follows that the statute of limitations period ended around November 16, 2017, but certainly in late fall 2017. Yet, Austin filed the instant lawsuit against Midwest in October 2018, close to three years after its cause of action accrued. Because Austin waited nearly three years to file the instant lawsuit and it has not pled any facts showing it reasonably could not have been expected to learn the extent of coverage simply by reading the policy, Austin filed its lawsuit after the time period mandated by law.

¶ 20    Nevertheless, Austin highlights *Perelman v. Fisher*, 298 Ill. App. 3d 1007 (1998), where this court held that, despite a plaintiff waiting seven years after receiving an allegedly deficient insurance policy to file a lawsuit against his insurance broker, the delay was not an absolute bar to his right to recover against the broker. According to Austin, because the facts of *Perelman* are "nearly identical" to the facts of the instant case, its nearly three-year delay from receiving the policy to bringing the lawsuit should likewise not be an absolute bar to his lawsuit continuing.

¶ 21    In *Perelman*, the plaintiff sued his insurance broker seven years after the policy had been issued for failing to procure a disability policy that included cost-of-living adjustments. *Id.* at 1008-09. On the broker's motion, the circuit court dismissed the plaintiff's complaint as time-barred by a then-five-year statute of limitations. *Id.* at 1009-10. On appeal, the appellate court observed that an insurance broker owes a fiduciary duty to the insured and, because of this duty, the insured's failure to read and understand the terms of a policy upon receipt of the policy was not an absolute bar to the insured's right to recover against the broker. *Id.* at 1011-13. As such, the appellate court found that there was a question of fact as to when the plaintiff knew or should have known of the alleged deficiency in the policy, and thus, dismissal was inappropriate at that stage in the litigation. *Id.* at 1013.

¶ 22    However, as previously discussed, because of Public Act 89-638, which added section 2-2201 of the Code, insurance brokers (as insurance producers) no longer have a fiduciary duty to their customers except in very limited circumstances, which are not present here. See Pub. Act 89-638, § 5 (eff. Jan. 1, 1997) (adding 735 ILCS 5/2-2201). Now, insurance brokers have a duty to exercise ordinary care for most situations, which has put the onus on customers to read and understand the terms of their insurance policies. This obligation means that a cause of action against a broker for negligent procurement accrues at the moment the customer receives the policy. See *Krop*, 2018 IL 122556, ¶¶ 29, 35, 38. Austin's reliance on *Perelman* is therefore misplaced, and there is no genuine issue of fact as to when Austin knew or should have known of the alleged deficiency in its policy. Consequently, Austin's lawsuit was time-barred, and the circuit court correctly granted Midwest's motion to dismiss.

¶ 23                              C. Constitutionality of Statute of Limitations

¶ 24    Austin also challenges the constitutionality of the two-year statute of limitations found in section 13-214.4 of the Code (735 ILCS 5/13-214.4 (West 2018)). Austin argues that the

statute of limitations shows that the Illinois legislature had a clear intent to provide special insulation to insurance producers from claims and causes of action by insureds. According to Austin, under the special legislation clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13), section 13-214.4 is unconstitutional.

¶ 25   Initially, Midwest contends that the issue is not properly before this court because (1) Austin's notice of appeal stated that it was challenging the circuit court's May 21, 2019, judgment and (2) in the court's judgment that day, the court did not make an express finding concerning the constitutionality of section 13-214.4. While Midwest is correct that the court did not address the constitutionality of the statute of limitations in its written order dismissing Austin's complaint, Austin clearly raised the challenge in response to Midwest's motion to dismiss. And while the court did not address the issue, it certainly could have; as such, its failure to address the constitutional challenge does not preclude our consideration of the issue. See *Oak Park Trust & Savings Bank v. Village of Mount Prospect*, 181 Ill. App. 3d 10, 19 (1989) (reviewing a constitutional challenge to the Illinois Real Estate License Act, despite the fact that "the trial court did not directly address the issue in its order" where the plaintiff raised the issue below and on appeal).

¶ 26   Turning to Austin's challenge to the constitutionality of section 13-214.4, it is not clear that Austin is truly contending that the law itself is unconstitutional. Rather, Austin posits that "[t]he interpretation of the Insurance Producers Act," the public act that added section 13-214.4, "by the Supreme Court in [*Krop*] provides unique protection to insurance producers by allowing the statute of limitations to run before an event occurs which gives rise to a claim." Stated another way, Austin appears to be arguing in part that our supreme court incorrectly determined when a cause of action accrues for purposes of the statute of limitations found in section 13-214.4, rather than actually arguing that the law itself is special legislation that runs afoul of the special legislation clause of the Illinois Constitution. To the extent Austin has made this argument, it is axiomatic that we must follow the precedent established by our supreme court, and we have no power to diverge from that precedent. See *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836 (2004) ("After our supreme court has declared the law with respect to an issue, this court must follow that law, as only the supreme court has authority to overrule or modify its own decisions."). We must follow our supreme court's holding in *Krop*.

¶ 27   However, to the extent Austin does posit that section 13-214.4 is unconstitutional under the special legislation clause of the Illinois Constitution, Austin has failed to satisfy its burden.

¶ 28   The special legislation clause of the Illinois Constitution prohibits the legislature from enacting a "special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. The clause prohibits the legislature "from conferring a special benefit or privilege upon one person or group of persons and excluding others that are similarly situated." *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 18. Its purpose is to prevent the legislature from enacting arbitrary classifications that discriminate in favor of a particular group absent a legitimate reason. *Id.* But merely because a law treats one group of people differently than another does not mean that the special legislation clause is implicated. *Id.* ¶ 22. Determining whether a law runs afoul of the special legislation clause requires a two-part analysis. *Id.* ¶ 23. First, we must determine if the statutory classification discriminates in favor of a particular group. Second, if it does, we must determine whether the classification is arbitrary. *Id.* Where a fundamental right or suspect class is not implicated, and there has been

no allegation by Austin that one of these is implicated, we analyze the statute by employing the rational-basis test. *Id.* ¶ 24. Additionally, in reviewing a claim concerning the constitutionality of a statute, we must presume that the challenged legislative enactment is constitutional, and the party raising the constitutional challenge has the burden to prove otherwise. *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18. "A special legislation challenge is generally judged under the same standards applicable to an equal protection challenge." *Quinn*, 2016 IL 119704, ¶ 24. And in an equal protection challenge, where the party challenging the legislation's constitutionality "fails to show that he is similarly situated to the comparison group, his equal protection challenge fails." *In re M.A.*, 2015 IL 118049, ¶ 26.

¶ 29    Austin has not met its burden, as it fails to show, let alone explain, how a two-year statute of limitations for claims and causes of action against insurance producers (and limited insurance representatives and registered firms) is a special benefit or privilege conferred upon this group at the expense of others that are similarly situated. Critically, Austin has not even identified a comparable group that does not receive the alleged special protection. Instead, Austin generally posits that "[n]o other class of potentially responsible parties is afforded such insulation and virtual immunity from claims." This assertion is not sufficient to show that the statute of limitations for claims against insurance producers (and limited insurance representatives and registered firms) is a special benefit or privilege from which others who are similarly situated are excluded. See *Quinn*, 2016 IL 119704, ¶ 18. For this reason, Austin has failed to meet its burden to overcome the presumption that section 13-214.4 of the Code is constitutional.

¶ 30                                           III. CONCLUSION
¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.