2016 IL App (1st) 141845
No. 1-14-1845
Opinion filed November1, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

SCOTTSDALE INSURANCE COMPANY,               )
                                            )
        Plaintiff-Appellee,                 )
                                            )
v.                                          )
                                            )
LAKESIDE COMMUNITY COMMITTEE,               )
ROBERT F. HARRIS, COOK COUNTY PUBLIC        )
GUARDIAN, as Independent Administrator of the )
Estate of Angel Hill, Deceased, ANGEL GREEN )
AND ANTHONY PRATER,                         )
                                            )   Appeal from the Circuit Court
        Defendants-Appellants.              )   of Cook County.
                                            )
_____     )
LAKESIDE COMMUNITY COMMITTEE,               )
                                            )   No. 12 CH 23277
        Counterclaim-Plaintiff,             )
v.                                          )
                                            )   The Honorable
SCOTTSDALE INSURANCE COMPANY,               )   Sophia Hall,
                                            )   Judge, presiding.
        Counterclaim-Defendant.             )
                                            )
_____     )
LAKESIDE COMMUNITY COMMITTEE,               )
                                            )
        Third Party-Plaintiff-Appellant,    )
v.                                          )
                                            )
W.A. GEORGE INSURANCE AGENCY,               )
                                            )
        Third Party-Defendant-Appellee.     )

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1      Tragically, two-year old Angel Hill was killed while in the care of her mother, Angel Green, and her boyfriend, Anthony Prater. At the time of Angel's death, she and her siblings were wards of the court with the Illinois Department of Children and Family Services acting as the children's guardian due to findings of abuse. DCFS retained Lakeside Community Committee to monitor the children's visits to Green's home. During one visit, Green informed a Lakeside caseworker of bruises on Angel's stomach. The caseworker took no action. A few days later, Angel was dead; Green and Prater were charged with her murder.

¶ 2      On behalf of Angel's estate, the Cook County Public Guardian sued Lakeside for wrongful death. Lakeside agreed to a consent judgment in the amount of $3.5 million and assigned its claims against its insurer, Scottsdale Insurance Company, and its insurance broker, W.A. George Insurance Agency, to the Public Guardian. Scottsdale denied coverage and filed a declaratory judgment action. The Public Guardian then filed a third party complaint against W.A. George, alleging fraud, negligence, breach of contract, and breach of fiduciary duty in procuring the insurance policy. The trial court dismissed the third party complaint on statute of limitations grounds, finding Lakeside knew or should have known that W.A. George obtained the wrong type of insurance policy when the policy was procured, more than two years before the third party complaint was filed. We disagree and reverse. Lakeside's cause of action accrued when it learned its insurer was denying coverage, not when the policy was procured. Because Lakeside filed its claim less than two years after learning of the denial of coverage, the statute of limitations poses no bar to the action.

¶ 3                              BACKGROUND

¶ 4        Lakeside, a long-established non-profit corporation, contracts with DCFS to provide foster care and child welfare services such as supervising foster families and children who have been made wards of the state, including children victimized by abuse. In early 2009, Lakeside asked W.A. George, an insurance broker, to obtain an appropriate insurance policy to cover its services. Lakeside representatives met with W.A. George agents in February 2009 to provide information about Lakeside's insurance needs and discuss the nature of the business, including its role as a DCFS contractor. Lakeside gave W.A. George a brochure describing Lakeside's programs and services and its affiliation with DCFS. Based on this information, W.A. George applied for and obtained insurance from Scottsdale Insurance Company on Lakeside's behalf. The policy was a commercial general liability policy, effective until March 2010, and then renewed for another year, to March 2011. In at least two places—the supplemental declarations page and the "sexual and/or physical liability coverage form"—the policy erroneously described Lakeside's business as a "halfway house."

¶ 5                        Angel Hill's Short Life and Tragic Death

¶ 6        Angel Hill spent her entire life in DCFS custody and foster care. Her mother, Angel Green, came to the attention of DCFS in October 2006, when her two-month old son presented with multiple physical injuries, including several broken bones and swelling and bruising to the back of the head. The circuit court entered an order finding that Green's two children had been abused and neglected, made them wards of the court, appointed DCFS as their guardian, and placed the two children in foster care with their grandmother. In November 2006, DCFS assigned Lakeside to monitor and provide social services to the children and the family.

¶ 7 Immediately after her birth in August 2008, Angel was placed in DCFS custody due to the serious and substantial risk her mother posed. Like her two siblings, Angel's grandmother cared for her. In April 2010, the juvenile court granted Green overnight visits with her children in her home, and by October 2010, the children were spending six days a week with Green. When the juvenile court learned Green was dating Anthony Prater, a convicted murderer, the court ordered Prater not be present during the children's visits and required Lakeside to perform unannounced visits to Green's home to ensure the children's safety and well-being.

¶ 8 Between October 6 and 11, 2010, the children stayed at Green's home for an unsupervised visit. On the morning of October 9, Green called a caseworker to check in. Green told the caseworker Angel had a bruise on her stomach and had been crying overnight. The Lakeside caseworker did not go to Green's home to see the bruise, did not instruct Green to take Angel to the hospital, and did not take any action to ensure Angel's safety and welfare. On October 11, Green claims she found Angel dead. An autopsy determined that Angel died from multiple internal injuries caused by blunt force trauma. Green and Prater were charged with murder, as well as other lesser offenses, in connection with Angel's death.

¶ 9 The Circuit Court Proceedings

¶ 10 On March 22, 2012, the Public Guardian, as independent administrator of Angel Hill's estate, filed a complaint in the circuit court against Lakeside, Green, and Prater for wrongful death. Lakeside settled with the Public Guardian and entered into a consent judgment in the amount of $3.5 million. On April 6, 2012, Lakeside submitted the Public Guardian suit to Scottsdale through W.A. George. Scottsdale denied the claim on May 4, 2012, and filed a declaratory judgment action on June 12, 2012. (While this appeal was pending, the circuit court granted Scottsdale's motion for summary judgment, finding no coverage under the policy.)

¶ 11        On August 10, 2012, Lakeside filed its answer, affirmative defenses, and counterclaim to Scottsdale's declaratory judgment action. Lakeside also filed its initial third-party complaint against W.A. George, alleging fraud, negligence, breach of contract, and breach of fiduciary duty. Lakeside contended, in short, that it suffered damages because W.A. George failed to procure the proper type of policy based on the information it provided and thus left Lakeside without insurance coverage for the claim involving Angel's death. W.A. George moved to dismiss alleging, in part, that Lakeside's third-party complaint was barred by the two year statute of limitations for claims against an insurance producer under 13-214.4 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/13-214.4 (West 2014). That section states, in part, "[a]ll causes of action *** against an insurance producer *** concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." *Id.* W.A. George argued that the cause of action accrued when the insurance policy was issued, which was more than two years before the cause of action was filed.

¶ 12        After a hearing, the trial court denied the statute of limitations argument but granted W.A. George leave to file another motion regarding Lakeside's duty to request a copy of the insurance policy. W.A. George refiled its motion to dismiss, relying primarily on *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, to argue that the statute of limitations commenced when W.A. George procured the policy for Lakeside in March or April 2009 and the filing of the August 2012 third party complaint was beyond the two year statute of limitations.

¶ 13        After another hearing, the trial court granted W.A. George's motion to dismiss, without prejudice, and gave Lakeside 21 days to refile or amend its third party complaint. The court stated "in this particular case, and based upon the law that I reviewed, *** the allegations in the

complaint are not sufficient to allege a circumstance where tolling would occur. *** Lakeside alleges no facts which would give a reasonable basis for it not knowing the terms of its policy." On November 8, 2013, Lakeside filed an amended third-party complaint, and W.A. George again moved to dismiss. At the hearing, Lakeside's attorney argued that Lakeside assumed, based on its meeting with W.A. George representatives and the face of the policy, that it had a commercial general liability policy with an endorsement that covers physical and sexual abuse claims, but that W.A. George procured a policy that erroneously describes Lakeside as a "halfway house," and that the endorsement only covered physical and sexual abuse by Lakeside employees, both of which precluded coverage.

¶ 14    The trial court granted the motion to dismiss, with prejudice, under section 2-619(a)(5) of the Code. The trial court stated, "if you had the policy, that would have put you on notice as to all these issues that you raised during the argument." The court granted the motion to dismiss. (Lakeside settled with the Public Guardian for $3.5 million and in a consent judgment assigned its claims against W.A. George to the Public Guardian.)

¶ 15                                ANALYSIS

¶ 16    As an initial matter, Illinois Supreme Court Rule 342(a) requires an appellant's brief include "as an appendix, *** a complete table of contents, with page references, of the record on appeal." Ill. S. Ct. R. 342(a) (eff. Jan. 1, 2005). The table of contents to the Public Guardian's brief does not comply with Rule 342(a). The brief does not contain a table of contents to the record on appeal, but instead a one-page table of contents with references to the pages of the appendix attached to the appellant brief.

¶ 17    If counsel is unsure about how to prepare a formal brief, it is better to seek clarification. When a brief fails to follow the rules, we may dismiss it. *Fender v. Town of Cicero*, 347 Ill. App.

3d 46, 51 (2004). But, the argument section of the Public Guardian's appellant brief provides references to the volume and pages of the record, as required by Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008), so we are able to assess whether the facts the Public Guardian presents are accurate and a fair portrayal. Thus, we choose to exercise our discretion and address the merits.

¶ 18                                    Statute of Limitations

¶ 19        A motion to dismiss based on section 2-619 admits the legal sufficiency of the complaint, but asserts that the claim is defeated based on certain defects, defenses, or other affirmative matter. *Mount Mansfield Insurance Group, Inc., v. American International Group, Inc.*, 372 Ill. App. 3d 388, 392 (2007). In particular, section 2-619(a)(5) permits the circuit court to dismiss a cause of action if was not commenced within the time limited by law. We review a section 2-619 order of dismissal *de novo*. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008).

¶ 20        The parties agree that the two-year statute of limitations set forth in section 13-214.4 governs Lakeside's negligent procurement and breach of contract claims against W.A. George. (735 ILCS 5/13-214.4 (West 2014)). See *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 565 (2009) (Two year statute of limitations in section 13-214.4 "encompasses [all] claims by an insured against his insurance agent."). That section provides that "[a]ll causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4 (West 2014). This encompasses claims by an insured against its insurance agent or broker. *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*,

394 Ill. App. 3d 548, 565 (2009); *United General Title Insurance Co. v. AmeriTitle, Inc.*, 365 Ill. App. 3d 142, 152 (2006) (citing *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 32 (2005)), *overruled on other grounds by Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461 (2008).

¶ 21    The parties disagree as to when Lakeside's causes of action against W.A. George accrued. W.A. George maintains that both causes of action accrued when it procured the policy for Lakeside because Lakeside should have reviewed the policy then and could have discovered the deficiency. Lakeside contends that the discovery rule applies to delay commencement of the statute of limitations until a plaintiff knows or reasonably should know of its injury and that it was wrongfully caused. According to Lakeside, the statute of limitations did not begin to run until, at the earliest, when Scottsdale denied coverage on May 4, 2012. Lakeside further contends timeliness of its claims, having filed them within a little more than three months after Scottsdale denied coverage.

¶ 22                                    Discovery Rule

¶ 23    The discovery rule was developed to "avoid mechanical application of a statute of limitations in situations" involving individuals who would be barred from suit before even being aware of an injury. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77-78 (1995). The rule tolls the limitations period until a person "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981).

¶ 24    "Wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct or knowledge that an actionable wrong was committed. *Steinmetz v. Wolgamot*, 2013 IL App (1st) 121375, ¶ 30 (citing *Castello v. Kalis*, 352 Ill. App. 3d 736, 744-45 (2004)). Rather, a

plaintiff knows or should know his or her injury was "wrongfully caused" when he or she "becomes possessed of sufficient information concerning [the] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." (Internal quotation marks omitted.) *Steinmetz*, 2013 IL App (1st) 121375, ¶ 30; see also *Knox College*, 88 Ill. 2d at 416, and *Hanks v. Cotler*, 2011 IL App (1st) 101088, ¶ 19 ("the commencement of the limitations period" is tolled "until the potential plaintiff possesses sufficient information concerning his or her injury and its cause to put a reasonable person on notice to make further inquiries").

¶ 25        Under well-settled law in Illinois, once an injured person knows or reasonably should have known both of the injury and that it was wrongfully caused, the person carries the burden to inquire further as to whether a legal remedy exists. *Castello*, 352 Ill. App. 3d at 745; *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 23 ("as soon as [the plaintiff] has sufficient information about her injury and its cause to spark inquiry in a reasonable person as to whether the conduct of the party who caused her injury might be legally actionable," plaintiff has burden to "investigate whether she has a viable cause of action."). The rule encourages diligent investigation by potential plaintiffs without foreclosing any claims about which the plaintiffs could not have been aware. *Mitsias*, 2011 IL App (1st) 101126, ¶ 21. As our supreme court explained: "In that way, an injured person is not held to a standard of knowing the inherently unknowable [citation], yet once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his [or her] rights." *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981).

¶ 26        Usually, the time a plaintiff knows or reasonably should have known about an injury and that it was wrongfully caused presents a question of fact. *Nair v. Bloom*, 383 Ill. App. 3d 867,

870 (2008) (citing *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)). But, where "it is apparent from the undisputed facts *** that only one conclusion can be drawn, the question becomes one for the court" (*Witherell*, 85 Ill. 2d at 156), and can be resolved as a matter of law, making a section 2-619 dismissal on statute of limitations grounds appropriate. See *Castello*, 352 Ill. App. 3d at 744 (citing *Witherell*, 85 Ill. 2d at 156); see also *Nair*, 383 Ill. App. 3d at 870; *Saunders v. Klungboonkrong*, 150 Ill. App. 3d 56, 61 (1986) ("If only one conclusion can be drawn from the undisputed facts, the question of the timeliness of the plaintiff's complaint is for the court to decide.").

¶ 27    Our courts have repeatedly applied the discovery rule to causes of action, such as this one, brought against an insurance broker or agent, which would otherwise be barred by the two year statute of limitations in section 13-214.4 of the Code of Civil Procedure (735 ILCS 5/13-214.4 (West 2010)). See *e.g.*, *Broadnax v. Morrow*, 326 Ill. App. 3d 1074 (2002); *Indiana Insurance Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300 (2001); *General Casualty Co. v. Carrol Tiling Service, Inc.*, 342 Ill. App. 3d 883, 899-900 (2003).

¶ 28    In *Indiana Insurance Co.*, we held that the discovery rule applies to section 13-214.4, where an insurance company brought a claim against its agent. But, because the insurance company failed to meet its burden of pleading sufficient facts to invoke the discovery rule, we did not rule on the precise time that a claim against an insurance agent begins to run.

¶ 29    The point of accrual of the cause of action was specifically decided in *Broadnax*, a case involving a claim against an insurance agent. We held the claim accrued at the time of the denial of coverage and not after damages were sustained as a result of the denial of coverage. *Broadnax*, 326 Ill. App. 3d at 1081. In *Broadnax*, the plaintiff property owner alleged that the defendant negligently failed to procure an insurance policy that met its insurance needs on a

piece of property the plaintiff wanted to renovate and develop. *Id.* at 1076. When a fire destroyed the property before it was developed, the plaintiff brought a declaratory judgment action against the insurance company seeking coverage. The trial court granted summary judgment in favor of the insurer, citing plaintiff's failure to comply with the vacancy provisions of the policy, which was affirmed on appeal.

¶ 30        Plaintiff then filed a separate negligence action against the insurance agent. *Id.* at 1076-77. Defendant moved to dismiss, arguing that the plaintiff failed to file the negligence claim within the two year statute of limitations. The trial court granted the motion, which, again, was affirmed on appeal. After recognizing the fiduciary nature of the relationship between insured and insurance agent, we applied the discovery rule. *Id.* at 1080-81. But, because section 2-613 of the Code (735 ILCS 5/2-613 (West 1998)) permits the pleading of alternative theories of recovery, we found the plaintiff knew or should have known of the injury when his insurance claim was first denied and should not have waited until the outcome of declaratory judgment proceedings to determine whether coverage existed. *Broadnax*, 326 Ill. App. 3d at 1081. A dissenting opinion in *Broadnax* criticized the majority for requiring plaintiffs to file "anticipatory" lawsuits based on the assumption that the court would rule against them. *Id.* at 1083 (Cook, J., dissenting).

¶ 31        *Broadnax* has been followed in several cases to find that a cause of action against an insurance agent accrues when coverage is denied. *State Farm Fire & Casualty*, *Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 566 (2009) (holding cause of action against insurance broker accrues at "the moment when the coverage is denied" and is extended by the discovery rule "until the plaintiff learns of the denial of coverage, if the plaintiff was not immediately aware of it."); *General Casualty Co*, 342 Ill. App. 3d at 899-900 (holding that the

discovery rule tolled applicable statute of limitations to plaintiff's third-party breach of fiduciary duty claim against insurance agent until insurer filed claim seeking declaration that plaintiff was not covered by workers' compensation policy). See also *Commonwealth Insurance Co. v. Stone Container Corp.*, 323 F.3d 507, 510-11 (7th Cir. 2003) (compared *Broadnax* and *Indiana Insurance* to the law in other jurisdictions and found nothing "outside the norm").

¶ 32 W.A. George asserts that if Lakeside had read its policy, as it was obligated to do, it would have discovered W.A. George's breach and sought a resolution before Angel was killed and before the claim was denied. For support, W.A. George relies on *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939.

¶ 33 The plaintiffs in *Hoover* built a home on their property and obtained a policy from Country Mutual insuring against a loss in the event of fire or other casualty. *Id.* ¶ 4. A few years later, realizing that they would not be able to rebuild their home with their own labor, as they had done, the plaintiffs contacted a Country Mutual agent to increase the liability limits to cover the replacement cost of the home and its contents. *Id.* ¶ 20. The plaintiffs contended that the Country Mutual agent did not ascertain the actual replacement cost of the home and did not advise them that they would not receive the replacement cost unless they purchased a policy with liability limits of at least 80% of the actual replacement cost. *Id.* ¶ 21. They also contended the agent led them to believe that the he had obtained a policy that would cover the actual replacement cost. *Id.*

¶ 34 Country Mutual delivered a new policy to the plaintiffs in May 2007. *Id.* ¶ 4. In January 2008, the home was destroyed in an explosion. *Id.* ¶ 13. After making several payments to the plaintiffs, the agent informed them that Country Mutual would make no further loss payments. He also informed them that their policy did not entitle them to full replacement cost coverage

because they purchased a policy with a liability limit that was less than 80% of the replacement cost. *Id.* ¶ 17. The homeowners sued Country Mutual and the agent, alleging breach of contract, bad faith, and negligence. *Id.* ¶ 19. Country Mutual and the agent separately moved to dismiss, arguing, in part, that the statute of limitations barred plaintiffs' claims. *Id.* ¶ 24. Plaintiffs argued that the discovery rule postponed the running of the statute of limitations period until they learned of their injury, which was when the agent informed them that Country Mutual would not make any further payments. *Id.* ¶ 26. The trial court dismissed all claims as time barred. *Id.* ¶ 27.

¶ 35    We affirmed the trial court, finding, in relevant part, that when the plaintiffs spoke to the Country Mutual agent, they only sought to increase the liability limits in the policy but did not seek to change two policy provisions: (1) the provision stating that the liability limit for the dwelling had to be at least 80% of the replacement cost to satisfy the requirement for replacement cost coverage and (2) the condition providing that Country Mutual would not be liable in any one occurrence for more than the applicable limit of liability. *Id.* ¶ 56. The declarations page of the policy expressly limited the amount Country Mutual would pay, and the conditions section stated that Country Mutual would not be liable in any one occurrence for more than the limit of liability. *Id.* ¶ 58. The court found that when Country Mutual provided the plaintiffs with a copy of the policy, they "knew or should have known" of the policy's shortcomings. We rejected plaintiffs' argument that the discovery rule tolled the statute of limitations and found that because the plaintiffs received the policy more than two years before they filed their complaint, the statute of limitations precluded their claims. *Id.* ¶ 61.

¶ 36    W.A. George contends that, as in *Hoover*, the discovery rule should not be applied to toll the statute of limitations because Lakeside was put on notice that the policy was inadequate on the date it was issued. But, *Hoover* is readily distinguishable. First, the circumstances in which

Lakeside acquired its policy differ significantly from the circumstances in *Hoover*. There, the plaintiffs already had a homeowners' policy and were negotiating directly with a Country Mutual agent to amend just one portion—the limits in the event of a complete loss of the home. While the specific type of loss that could occur—whether by fire, tornado or, as did happen, explosion—was unknown, the plaintiffs were seeking a specific provision—the full cost of replacing the house—and could be expected to determine if the provision they sought was there.

¶ 37    Conversely, Lakeside hired W.A. George to procure a policy that would cover multiple types of claims it might file in the course of its business as a social services agency and DCFS contactor. Even if representatives from Lakeside had read the policy, they would not know in advance that a claim involving the murder of a child in DCFS custody was not covered until the claim was denied. If, like the plaintiffs in *Hoover*, Lakeside had sought to renegotiate its policy to specifically request coverage for claims involving the murder of a child in its care and then failed to read the policy, the holding in *Hoover* might apply. But that is not what occurred. Moreover, under W.A. George's argument, Lakeside would have to know all possible claims at the time the policy was issued and read the policy to determine if the policy covered them.

¶ 38    *Indiana Insurance* and *Broadnax* and similar cases point to the same moment for the accrual of a claim against an insurance producer—when coverage is denied. *Broadnax*, 326 Ill. App. 3d at 1081; *Indiana Insurance*, 324 Ill. App. 3d at 304. But as *Indiana Insurance* explains, if the plaintiff was not immediately aware of the denial of coverage, the "discovery rule" may nevertheless delay the commencement of the statute of limitations period until the plaintiff learns of the denial. *Id.* Lakeside became aware of the denial of coverage on May 4, 2016, when Scottsdale denied the coverage. Because Lakeside filed its third party complaint against W.A.

George only three months later, the statute of limitations had not expired. Thus, we reverse the dismissal of Lakeside's third-party causes of action and remand for further proceedings.

¶ 39　　　　　Reversed and remanded.