# Illinois Official Reports

## Appellate Court

*RVP, LLC v. Advantage Insurance Services, Inc.*, 2017 IL App (3d) 160276

| | |
|---|---|
| Appellate Court Caption | RVP, LLC, and RIVER VALLEY RECYCLING, LLC, Plaintiffs-Appellants, v. ADVANTAGE INSURANCE SERVICES, INC., COMMERCIAL INSURANCE GROUP, INC., and TOM ROULE, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-16-0276 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | April 19, 2017<br><br>June 14, 2017<br>June 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 13-L-000113; the Hon. Adrienne W. Albrecht, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey J. Asperger and Steven R. Rogovin, of Meltzer, Purtill & Stelle LLC, of Chicago, for appellants.<br><br>Robert E. Elworth and Anthony J. Tunney, of HeplerBroom LLC, of Chicago, for appellees. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices Lytton and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiffs filed a complaint alleging negligence and breach of contract counts against their insurance broker agencies, Advantage Insurance Services, Inc. (Advantage) and Commercial Insurance Group, Inc. (CIG), and their insurance agent, Tom Roule. In the complaint, plaintiffs alleged defendants were negligent and in breach of contract for failing to procure sufficient insurance coverage, resulting in plaintiffs being unable to recover insurance proceeds for property that was destroyed in a fire. The trial court granted defendants' motion for summary judgment because the plaintiffs' complaint was filed beyond the applicable two-year statute of limitations. Plaintiffs appealed, arguing that (1) the trial court erred in finding, as a matter of law, that plaintiffs knew or should have known the insufficient coverage limits upon their receipt of the insurance policies; (2) the trial court erred by failing to apply the established rule in *Perelman v. Fisher*, 298 Ill. App. 3d 1007 (1998), which provided that where an insured brings a claim against its insurance broker or insurance agent, a court cannot presume the insured knew or should have known of the contents of the insurance policy merely because the insured received that policy; and (3) the trial court erred in finding, as a matter of law, that plaintiffs' claim that defendants' failed to procure sufficient coverage was barred by the statute of limitations. We affirm the trial court's grant of summary judgment in favor of defendants.

¶ 2                                              FACTS

¶ 3        Plaintiff, RVP, owned real property at 1244 Grinnell Road and 1246 Grinnell Road, in Kankakee, Illinois. In 2007, plaintiff, River Valley Recycling, began operating a recycling facility out of a portion of RVP's building at 1244 Grinnell Road. Mark Fill was a member of RVP and the Chief Financial Officer (CFO) of River Valley Recycling. Fill was responsible for the procurement and for the management of insurance issues for plaintiffs.

¶ 4        Defendants, Advantage and CIG, were the insurance broker agencies that procured insurance on behalf of plaintiffs. Defendant, Tom Roule, was an insurance agent employed by Advantage and, after September 7, 2009, by CIG. In 2007 or early 2008, Fill began to use Roule to provide insurance broker services for plaintiffs.

¶ 5                                      A. Travelers Policy

¶ 6        On March 1, 2008, Roule procured a policy for RVP from Travelers Casualty Insurance Company (Travelers policy) for "building[s] 1 and 2," which were the buildings located at 1244 and 1246 Grinnell Road, with coverage limits of $3 million and $600,000, respectively. On April 21, 2008, a "Change Endorsement" was issued, revising the limits to $1.5 million for the 1244 building and $1.5 million for the 1246 building, with blanket limits so that $3 million of coverage could have applied to either or both of the buildings. Fill could not recall the reason for change in coverage and had not initiated the process for the change but would have been the person who authorized the change. On April 1, 2009, the policy was renewed with the limits increased to $1.545 million for each building, with blanket coverage also provided. The increase in coverage was due to Travelers' standard policy of a three percent increase each following year. On January 18, 2010, Travelers issued a notice of nonrenewal, indicating that the policy would not be renewed on its expiration date of April 1, 2010.

## B. Universal Policy

¶ 8      In July of 2008, River Valley Recycling was issued a commercial insurance policy through Universal Underwriters Insurance Company (Universal policy) for $1.3 million of blanket replacement cost coverage for its equipment and $1 million of coverage for its stock and inventory. The Universal policy was renewed some time prior to July 1, 2009. On July 1, 2009, River Valley Recycling was given notice that the Universal policy was being canceled effective August 1, 2009.

## C. Erie Policies

¶ 10      When the Universal policy was canceled, Fill faxed Roule the canceled policy and asked Roule to find the same or similar coverage to what plaintiffs had prior to the cancellation. When Travelers had canceled plaintiffs' policy, Fill instructed Roule to find the same or similar coverage as plaintiffs had under the canceled Travelers policy. Roule had a copy of the Travelers policy so he knew all the information.

¶ 11      In applying for new insurance coverage for business personal property, on July 29, 2009, Fill executed a five-page Erie insurance application for $75,000 of coverage for plaintiffs' business personal property. Roule did not send Fill the entire application. Fill executed his signature on the last page of the application and returned it to Roule. Fill denied seeing the entire five-page application. It was Fill's custom to certify insurance applications without seeing all the pages. Fill did not review the application to determine whether the policy afforded the same or similar coverage relative to the canceled policies but, instead, relied on Roule to obtain coverage that he had requested.

¶ 12      On August 1, 2009, Erie issued an insurance policy (Erie property policy) based on Fill's application. The declaration page of the Erie property policy specified that the coverage limits for business personal property was $75,000. The Erie property policy was subsequently renewed on two occasions—on August 1, 2010, and August 1, 2011—with the declaration page showing that the coverage limit was $75,000.

¶ 13      In applying for coverage on the buildings, on January 20, 2010, Fill executed an application for $1,545,000 of insurance coverage for plaintiffs' 1244 Grinnell property and $545,000 of coverage for plaintiffs' 1246 Grinnell property. The policy did not provide blanket coverage. Fill executed the final page of the application without seeing the amount of coverage for which he was applying. On February 1, 2010, the Erie policy pertaining to plaintiffs' buildings (Erie buildings policy) was issued. Erie sent a copy of the policy directly to Fill and RVP. The policy included a declaration page, indicating coverage limits of $1.545 million for plaintiffs' 1244 Grinnell property and $545,000 for plaintiffs' 1246 Grinnell property. Fill did not look at the Erie buildings policy upon his receipt of the policy to ensure that it afforded the same or similar coverage as the canceled policies. The Erie buildings policy was renewed the following year on February 1, 2011.

## D. Plaintiffs' Losses

¶ 15      On September 2, 2011, a fire occurred on the plaintiffs' Grinnell properties, destroying the buildings and the contents therein. Plaintiffs obtained a general contractor's proposal, which plaintiffs provided to Erie, to rebuild the 1244 building for $3,010,760. However, Erie only paid the coverage limit on the 1244 building of $1,545,000. Plaintiffs also obtained a general

contractor's proposal to replace the 1246 building for $544,608, but Erie only paid the "functional replacement" cost of $437,800. River Valley Recycling claimed that it sustained $1,028,977 in loss of business income but was only paid $40,173 for the loss of three pieces of equipment. In August 2011, the month prior to the fire, River Valley Recycling had made its final payment on a baler and had received a bill of sale for the baler on or about August 31, 2011. Erie denied River Valley Recycling's claim for the baler upon its determination that the baler was not covered under the terms of the Erie policy. Fill claimed that he did not learn that the coverage limits provided by the Erie policies did not provide the same or similar coverage as the canceled Travelers policy until after the fire.

¶ 16                                    E. Complaint

¶ 17        On August 30, 2013, plaintiffs filed a complaint alleging negligence and breach of contract counts against defendants for failing to obtain the amount of coverage Fill had requested. In their complaint, under the negligence count, plaintiffs alleged that defendants breached their common law and statutory duty of care to exercise ordinary care and skill in renewing, procuring, binding, and placing the coverage as requested by the plaintiffs in that defendants failed to procure and/or renew insurance policies with sufficient coverage; failed to advise plaintiffs that the new insurance policies did not provide sufficient coverage to protect against the loss of the Grinnell facilities, fixtures, permanent equipment and machinery, other equipment, supplies, tools, and inventory; and failed to inform plaintiffs of the necessary coverage to protect their assets and interests.

¶ 18        Under the breach of contract count, plaintiffs alleged that on or before February 1, 2010, RVP had engaged the services of Roule to procure insurance coverage to replace the coverage that was being canceled by Travelers and Universal in order to procure full coverage for plaintiffs' buildings, fixtures, machinery, equipment, supplies, tools, and inventory. Plaintiffs further alleged that, after the fire, they learned that their insurance coverage was not sufficient to cover the loss of the Grinnell facilities, fixtures, permanently attached machinery and equipment, other equipment, supplies, tools, and inventory and alleged that defendants had "breached their contract to procure sufficient insurance for the [p]laintiffs."

¶ 19                                  F. Motion to Dismiss

¶ 20        In response, defendants filed a motion to dismiss pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code). 735 ILCS 5/2-619(a)(5) (West 2012) (the action was not commenced within the time limited by law). In the motion, defendants argued that the complaint was filed beyond the two-year statute of limitations period for actions against insurance producers as specified under section 13-214.4 of the Code. 735 ILCS 5/13-214.4 (West 2012). The trial court denied the motion to dismiss, finding that the facts pled in the complaint did not specify when the plaintiffs had received copies of the policies to establish the date that the cause of action had accrued.

¶ 21                            G. Motion for Summary Judgment

¶ 22        Through discovery, it was determined that the Erie policies were delivered directly to Fill at the RVP/River Valley Recycling offices, but Fill was unsure of the exact date that he received the policies. Fill acknowledged that he received the policies some time prior to the

policies' renewal dates, which indicated he received a copy of the Erie buildings policy no later than January 31, 2011, and a copy of the Erie property policy no later than July 31, 2010.

¶ 23   Defendants filed a motion for summary judgment, arguing that plaintiffs brought their complaint beyond the two-year statute of limitations for actions against insurance producers. The trial court granted the motion for summary judgment, finding that the plaintiffs knew or should have known of the policy limits and whether those limits contained sufficient coverage when plaintiffs received the policies. Plaintiffs appealed.

¶ 24                                    ANALYSIS

¶ 25   On appeal, plaintiffs argue the trial court erred in granting defendants' summary judgment on the basis that plaintiffs' claims were time-barred. Specifically, plaintiffs argue the trial court erred (1) in finding that plaintiffs knew or should have known of the insufficient coverage limits upon receipt of the insurance policies as a matter of law; (2) by failing to apply the established rule in *Perelman v. Fisher*, 298 Ill. App. 3d 1007 (1998), which provides that where an insured brings a claim against its insurance broker, a court cannot presume the insured knew or should have known of the contents of the insurance policy merely because the insured received that policy; and (3) in finding that plaintiffs' claim regarding defendants' failure to procure sufficient coverage was barred by the statute of limitations as a matter of law.

¶ 26   An appeal following a grant of summary judgment is subject to a *de novo* review. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party would be entitled to judgment as a matter of law. *Id.* Where reasonable persons could draw divergent inferences from undisputed facts, summary judgment should be denied. *Id.*

¶ 27                  A. Plaintiffs' Knowledge of the Coverage Limits

¶ 28   Plaintiffs argue that the trial court erred in granting summary judgment to defendants where the trial court held that plaintiffs' claims were untimely as a matter of law because plaintiffs knew or should have known of the policies' lower coverage limits upon receipt of the policies. Plaintiffs contend that it is "well settled" under Illinois law that a claim arising out of a contractual relationship ordinarily accrues at the time of the breach and the accrual may be tolled by the "discovery rule." Defendants argue the trial court's ruling that the complaint was time-barred should be affirmed.

¶ 29   The two-year statute of limitations set forth in section 13-214.4 of the Code governs the plaintiffs' claims regarding defendants' negligent procurement and breach of contract in this case. 735 ILCS 5/13-214.4 (West 2012). Section 13-214.4 provides that all causes of action by an insured against his insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal cancellation of, or failure to procure any policy of insurance shall be brought within two years of the date the cause of action accrues. *Id.*; *Scottsdale Insurance Co. v. Lakeside Community Committee*, 2016 IL App (1st) 141845, ¶ 20.

¶ 30   Under the discovery rule, the limitations period does not begin to run until the plaintiff knows or reasonably should have known of its injury and that it was wrongly caused. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). At the point the injured person knows or should have known that his or her injury was "wrongly caused," the injured person possesses

sufficient information concerning his injury and the cause of his injury to put a reasonable person on notice to make additional inquiries. *Id.* at 415; *Scottsdale*, 2016 IL App (1st) 141845, ¶ 24. Generally, a cause of action against an insurance agent accrues under section 13-214.4 when coverage is denied, but is extended by the discovery rule to accrue at the time the plaintiff learns of the denial of coverage if he or she was not immediately aware of it. *Scottsdale*, 2016 IL App (1st) 141845, ¶ 31. When a party should be charged with knowledge of his or her injury and that it was wrongfully caused is generally a question of fact, though judgment may be entered as a matter of law when the undisputed facts lead to only one conclusion. *Id.* ¶ 26.

¶ 31    In this case, plaintiffs contend that they did not become aware of the lower coverage limits until after the fire on September 2, 2011, and argue their claim was timely because it was filed on August 30, 2013, within the two years of that time. Plaintiffs further argue that the trial court's presumption that they were aware of the coverage limits was erroneous as a matter of law because there was no evidence of their "actual knowledge" of the substantially lower coverage limits. In response, defendants argue that the cause of action accrued once the plaintiffs received the policies, at which time they knew or should have known of the policies' shortcomings pertaining to the coverage limits.

¶ 32    Here, plaintiffs applied for and received $1.545 million and $545,000 of coverage on the two buildings and $75,000 of coverage for business property. Plaintiffs received copies of the policies reflecting those coverage limits. Under this scenario, at the time plaintiffs received the policies, they should have been aware that they would not be extended any higher coverage than that of the policy coverage limits for which they had applied. Although plaintiffs argue there was no evidence of their actual knowledge of the policy limits, they should have reasonably known of the policy limits upon receiving the policies or the renewals of the policies, both of which indicated the coverage limits. See *Celotex*, 88 Ill. 2d at 414.

¶ 33                          B. Failure to Read Policy

¶ 34    Next on appeal, plaintiffs argue that under the "clear legal rule" set forth in *Perelman*, 298 Ill. App. 3d at 1012-13, *Economy Fire & Casualty Co. v. Bassett*, 170 Ill. App. 3d 765 (1988), *Black v. Illinois Fair Plan Ass'n*, 87 Ill. App. 3d 1106 (1980), and *Babiarz v. Stearns*, 2016 IL App (1st) 150988, the trial court could not, as a matter of law, presume that plaintiffs knew or should have known of the contents of the Erie policies upon plaintiffs' receipt of the policies. Citing *Perelman*, plaintiffs argue that an insured's duty to know the content of its policy should be tested in light of the fiduciary relationship existing between the insured and his agent. Plaintiffs contend that the question of when they knew or should have known of the insufficient coverage limits, so as to trigger the time that their claims against defendant had "accrued," is a disputed issue of material fact that cannot be determined as a matter of law. Plaintiffs contend that the trial court erred by failing to apply the established rule, as set forth in *Perelman*, that an insured's failure to read and understand the terms of a policy is not an absolute bar to recovery.

¶ 35    In *Perelman*, an insured sued its insurance broker for breach of duty and negligent misrepresentation after the broker procured a disability policy that did not provide for cost-of-living increases when the agent had indicated that plaintiff was getting the "best" policy and the policy would have an inflation provision. *Perelman*, 298 Ill. App. 3d 1007. When the insured received the policy, the insured "skimmed" it and observed references to

- 6 -

benefit adjustments related to the "consumer price index." *Id.* at 1009. Defendants filed a motion to dismiss the complaint as barred by statute of limitations where the complaint had been filed seven years after plaintiff received the policy. *Id.* at 1009-10. The trial court granted the motion to dismiss. *Id.* at 1010. On appeal in *Perelman*, the appellate court noted that when an insured sues the insurer for a discrepancy between the policy issued and the policy requested, the insured will be bound by the contract terms because he or she is under a duty to read the policy and inform the insurer of any discrepancy. *Id.* at 1011 (citing *Black*, 87 Ill. App. 3d at 1110, *Foster v. Crum & Forster Insurance Cos.*, 36 Ill. App. 3d 595 (1976), and *Furtak v. Moffett*, 284 Ill. App. 3d 255 (1996)). However, the appellate court further noted a distinction between an action against an insurer who issues the policy and an action against the agent who procures the policy because the agent or broker procuring the policy has a fiduciary duty and is responsible for any loss if there is a breach of that duty. *Perelman*, 298 Ill. App. 3d at 1011-12. The *Perelman* court held that an insured's failure to read and understand the terms of a policy that had been procured by a broker is not an absolute bar to the insured's right to recover against the broker for the broker's breach of a fiduciary duty. *Id.* at 1013. The *Perelman* court found that the trial court erred in dismissing the plaintiff's complaint as untimely because a genuine issue of material fact existed as to when the plaintiff should have known of the alleged deficiency in the insurance policy, which could not be answered until the trier of fact determined whether the plaintiff should have known of the deficiency upon receiving the policy or whether the policy's reference to the "consumer price index" could have reasonably been interpreted as providing an inflation increase provision so that plaintiff would not have been aware of the deficiency until the denial of a claim. *Id.* at 1013.

¶ 36    In this case, the trial court initially denied the defendants' motion to dismiss, finding there was a question of fact as to when plaintiffs had received the policies. Thereafter, during discovery, it was determined that plaintiffs received the policies prior to the policies' renewal periods, and the complaint was filed two years after that time. The evidence also showed that the policies indicated the coverage limits on the declaration pages and there was no indication or allegations that the amounts of the coverage limits were ambiguous. As such, plaintiffs should have known of the policy limits upon receiving the policies.

¶ 37    We do not reach the issue of whether plaintiffs' failure to read the policy was an absolute bar to recovery or was merely some evidence of contributory negligence because we do not reach the merits of this case. See *id.* at 1013 (finding "that the trial court erred in holding as a matter of law that plaintiff had a duty to 'realize what's in the policy and what is not' regardless of 'whether [plaintiff] is suing the broker or the insurance company' "). Instead, for statute of limitations purposes, we must determine when the plaintiffs should be charged with knowledge of the deficient coverage limits. Based upon the facts of this case, plaintiffs should have known of the deficient coverage limits upon receiving the policies where there was no claim of an ambiguity in the declaration of the coverage limits.

¶ 38                              C. Claim Barred by the Statute of Limitation

¶ 39    Finally on appeal, plaintiffs argue the trial court's holding that plaintiffs' claims regarding defendants' failure to procure sufficient coverage were barred by the statute of limitations was erroneous as a matter of law. Plaintiffs argue they were not aware that the Erie polices had substantially lower coverage limits than the plaintiffs had directed defendants to procure until after the fire on September 2, 2011, and that under the "discovery rule," their claims were

timely. Plaintiffs argue that there was a genuine issue of material fact of whether the plaintiffs knew or should have known of the policies' limits upon receiving the policies or at the time they claimed to have learned of the policies' limits after the fire, so as to preclude a summary judgment.

¶ 40    As discussed above, where the plaintiffs applied for certain policy coverage limits, received a policy reflecting those coverage limits, and renewed that policy multiple times, we hold that the insured should have known of the coverage limits upon receipt of the policies, which included declaration pages that specified the coverage limits. See *Babiarz*, 2016 IL App (1st) 150988, ¶ 43 (plaintiffs have an affirmative duty to review the terms of the new policy issued to them); *Perelman*, 298 Ill. App. 3d at 1011 (an insured is not excused from knowing the contents of an insurance policy where there are no allegations that it was ambiguous). Plaintiffs argue that their failure to read the policies would not have precluded their claims as a matter of law because a fiduciary relationship existed between them and defendants. See *Perelman*, 298 Ill. App. 3d at 1011-12 (where a fiduciary relationship exists, failure to read an insurance policy does not prevent a claim as a matter of law). As discussed above, the defendants' fiduciary duty and the issue of whether a party was negligent or contributory negligent go to the merits of plaintiffs' claims. However, for the purpose of determining when the plaintiffs' claims accrued, we find plaintiffs knew or should have known of the coverage limits upon receiving the policies. Thus, we affirm the trial court's grant of summary judgment in favor of defendants.

¶ 41                                    CONCLUSION

¶ 42    The judgment of the circuit court of Kankakee County is affirmed.

¶ 43    Affirmed.